### JOHN S. HUNTER *vs.* DANIEL E. GIDDINGS.

A memorandum in writing of a contract, signed by one of the parties thereto with his own name, is sufficiently executed within the statute of frauds to enable the other party to enforce the contract, although the name of the other party was signed to the memorandum by an attorney without adding his own signature as attorney, and the memorandum contained nothing to indicate that it was executed by him as attorney, and although the party sought to be charged supposed that he was contracting with the attorney personally, and that the signature which the attorney affixed was his own name; and if it is set up in defence against enforcement of the contract, that such supposal was caused by fraud or false pretence of the attorney, that is for the jury, and not for the court, to pass upon.

CONTRACT brought upon an instrument in writing by which the defendant agreed to cut and haul to the plaintiff's paper-mill at Glendale, in Stockbridge, six hundred cords of wood, for three dollars per cord. It bore date " Great Barrington, January 19, 1863," and began as follows : " Know all men by these presents, that we, Daniel E. Giddings of Great Barrington, Berkshire County, Massachusetts, and John S. Hunter, of Glendale (paper-mill), county and state aforesaid, have this day made the following contract," &c.; and it was subscribed with the name of the plaintiff, " John S. Hunter," and with the defendant's name, " Daniel E. Giddings."

The defendant's answer set up that one James Hunter came to him and represented himself as being John S. Hunter, of Glendale, and as the identical person whose name is signed to the instrument, and thereby induced him to make the alleged contract; that, so believing, he delivered one hundred and fourteen cords of wood to James Hunter at the paper-mill, supposing him to be John S. Hunter, and would have delivered more, but was prevented by him ; that he did not learn until afterwards that the plaintiff was not the person with whom he contracted, and that in fact no such person as John S. Hunter resided in Glendale; and therefore he denied that he ever made any contract with the plaintiff, and set up that the instrument upon which this action is brought is invalid and void, that his signature to it was unlawfully obtained, and that the plaintiff has no right to bring this action, nor has any cause of action on the contract.

At the trial in the superior court, before *Rockwell*, J., the plaintiff called as a witness James Hunter, who testified that he lived at Glendale, and was the father of the plaintiff, who lived at Hartford, Connecticut. He further testified to the signing of the instrument, and that he placed thereto the name of John S. Hunter, being authorized so to do. This last testimony was received against the defendant's objection. The witness then produced a power of attorney, which was put in evidence, and testified that he so signed John S. Hunter's name by virtue of it It bore date of July 1857, and ran from J. S. Hunter to James Hunter, the former empowering the latter " in my name to execute and deliver any writing, instrument or legal obligation in as full and ample a manner as I could do if personally present." A second document, dated December 11, 1862, was also introduced in evidence, the witness stating that he had the same in his possession at the time of the contract with the defendant. This was a letter by J. S. Hunter to the officers of the Housatonic Bank, stating that " the power of attorney given to my father, James Hunter, in July 1857, is in full force, and my father is fully authorized to place my name upon any note, draft, check or other obligation, and the same is as binding on me as if placed to the same by myself."

The witness further testified as follows : " I did n't tell Giddings that my son was the party contracting. I did n't give him to understand that I was not John S. Hunter. I suppose he thought I was John S. Hunter." " The business at the Glendale paper-mill was carried on in the name of John S. Hunter." " John S. Hunter told me, ' Father, you had better buy the wood,' and directed me to sign his name." " I told John S. Hunter about the contract. I can't say that he saw it. He furnished the money with which I made the payments." " I did not state to the defendant that I was John S. Hunter."

On cross-examination the witness testified : " John S. Hunter never lived at Glendale. He acquired the property at Glendale, I think, October 1, 1862. I think we started the paper-mills in January 1863." " I had previously failed. It was unpleasant to me to recur to it. I had n't any delicacy, when the question

was asked me, to prevent me from stating the truth, but had a delicacy in my own mind that it was unpleasant to recur to my failure. I did n't state that I was not John S. Hunter unless I was asked. When Giddings asked me about the responsibility of John S. Hunter, I did n't then state that I was not John S. Hunter. He asked me in substance, ' What is *your* responsibility ? ' John S. Hunter told me in Hartford, ' Father, you had better buy that wood, and see that the contract is all made right.' That is the only conversation in regard to the manner of signing the contract. He did n't tell me in words to sign his name to the contract. I never signed his name in any other way."

No evidence was offered or proposed to be offered to show that the defendant ever, before the bringing of this action, supposed that he was dealing otherwise than with John S. Hunter personally. The plaintiff offered to show that it was well known in Glendale that John S. Hunter was doing business there, and also to show that the defendant resided about two miles from Glendale, and did business there occasionally; which was objected to and ruled out.

Upon the above evidence, the judge ruled " that the contract, from the manner of its execution was a void contract, and could not be read in evidence ; that the question whether a contract was executed or not was one for the court, and not for the jury ; " and he directed the jury to return a verdict for the defendant ; to which rulings and instructions the plaintiff alleged exceptions.

*J. E. Field,* for the plaintiff.

*I. Sumner,* for the defendant, cited *Wood* v. *Goodridge,* 6 Cush. 117; 2 Washb. Real Prop. 573, 574, 575; *Therman v Cameron,* 24 Wend. 90; 2 Kent Com. 630, 631.

HOAR, J. The ruling of the learned judge at the trial was probably made upon the authority of some of the expressions used in the case of *Wood* v. *Goodridge,* 6 Cush, 117. But, without considering the precise accuracy of all the observations found in the opinion in that case, upon a point which was not necessary to its decision, we do not think it applicable to the case at bar.

The contract upon which this suit is brought was a contract not under seal, for the sale of personal property. It was not essential to its validity that it should be in writing. Some memorandum in writing, signed by the defendant, was originally requisite to enable the plaintiff to enforce it, under the statute of frauds; but the contract itself might have been oral Upon such a contract, if made by the agent in the name of the principal, without indicating the agency, the principal might be held, if he had afterward recognized and acted upon it. *Merrifield* v. *Parritt*, 11 Cush. 590. The oral contract between the parties, if the plaintiff's signature was treated as a nullity would support his action.

But the defendant puts his case upon the ground that he supposed he was contracting with the agent personally, and that the signature which the agent affixed was his own name. If that were so, and this supposition were caused by any fraud or false pretence of the agent, it might follow that the agent would be personally bound by the contract, which he had made by the name of John S. Hunter. But the fact that the agent was personally held would not prevent an undisclosed principal from suing upon it. *Eastern Railroad Co.* v. *Benedict*, 5 Gray, 561 *Sims* v. *Bond*, 5 B. & Ad. 393. *Huntington* v. *Knox*, 7 Cush. 371. *Lerned* v. *Johns*, 9 Allen, 419.

If the fraud were of such a nature as to entitle the defendant to rescind the contract, and he undertook to rescind it on that account, those facts should have been found by the jury, and could not be assumed by the court as the basis of a ruling that the contract was void. *Exceptions sustained.*