[No. 4528.   Decided October 6, 1903.]

B. H. DENNIS, *Appellant,* v. FIRST NATIONAL BANK OF SEATTLE, *Respondent.*[1]

PARTNERSHIP—CONTRACT OF INDIVIDUAL MEMBER—ATTORNEYS—SERVICES. One member of a law firm may contract for employment without disclosing the partnership, the general principles of partnership applying, and such a contract on behalf of the firm is shown entitling the firm to sue thereon where the firm entered an appearance in the case and corresponded with the client in reference to a discharge and services.

SAME—PLEADING—VARIANCE. Under a complaint alleging an express contract for employment made by a firm of attorneys there is no variance warranting a nonsuit where the proof shows a contract made by one member for the benefit of the firm, but without disclosing the partnership.

[1]Reported in 73 Pac. 1125.

11-33 WASH.

Appeal from a judgment of the superior court for King county, Griffin, J., entered June 30, 1902, dismissing the action upon granting a motion for a nonsuit. Reversed.

*Hawley & Huntley,* for appellant.

*Struve, Allen, Hughes & McMicken,* for respondent. The evidence showed an express contract with one member of the firm, which excludes an implied contract with others. *Walker v. Brown,* 28 Ill. 378, 81 Am. Dec. 287; *Ostrander v. Capital Inv. etc. Ass'n* (Mich.), 89 N. W. 964. The variance was material. *Thompson v. Stetson,* 15 Neb. 112, 17 N. W. 368; *Phillips v. Pennywit,* 1 Ark. 59; *Lost Lake Lumber Co. v. Smith,* 29 Wash. 713, 70 Pac. 134; *Black v. Struthers,* 11 Iowa 459.

PER CURIAM.—The present action was begun in the superior court of King county by appellant against respondent on an express contract for legal services, alleged to have been rendered by H. C. Dillon and E. T. Dunning, under the firm name and style of Dillon & Dunning, to respondent, appellant suing as their assignee. The cause came on for trial before the court and a jury. After submission of the evidence, the court, on motion of respondent, nonsuited appellant, and entered a judgment of dismissal against him, from which an appeal has been taken to this court.

The error alleged by appellant is the granting of the nonsuit and rendering the judgment of dismissal. From the record it appears that the trial court's decision was based on the claim that there was a variance "between the allegations of the complaint and the evidence produced, in that the complaint alleged a contract between the defendant, and H. C. Dillon and E. T. Dunning as copartners under the firm name and style of Dillon & Dunning, while

the evidence showed a contract between the defendant and E. T. Dunning only." The facts appearing at the time the nonsuit was granted, which bear upon that question, are in substance these: Respondent, on or about May 11, 1895, in Los Angeles county, California, recovered a judgment against Kate Calkins and C. C. Calkins for $1,520.50, which remained uncollected when E. T. Dunning, of the firm of Dillon & Dunning, first appeared in the transaction. One S. P. Mulford was the attorney of respondent in the action in which such judgment was recovered, and appeared therein as the attorney of record. Dillon and Dunning were partners practicing law at the city of Los Angeles in the years of 1897 and 1898. In the fall of 1897 the respondent, the First National Bank of Seattle, addressed to E. T. Dunning a letter with reference to employing him as its attorney to collect the above judgment. Considerable correspondence followed between Dunning and respondent relating to the matter of collecting this judgment, in which Dunning wrote about his services, wherein no reference is made to his partner, Dillon. Under date of November 23, 1897, respondent, at the city of Seattle, wrote Mr. Dunning at Los Angeles as follows (omitting date and address):

"Dear Sir: I have yours of the 19th in relation to the Calkins matter, and am writing Mr. Mulford today to turn the papers over to you. Your terms of 50 per cent of the claim, if collected, is satisfactory to us.

"Yours truly,          L. Turner, Cas."

Some later correspondence was had between Dunning and respondent, but it is without special significance, as we view the matters in controversy. After the date of the letter of November 23, 1897, to Dunning, on stipulation between attorney Mulford, representing respondent, Dillon & Dunning were substituted as its attorneys by order of the

court in Los Angeles county, and some effort was made by them to collect the judgment. In November, 1898, letters and telegrams passed between the respondent and Dillon & Dunning with reference to their discharge as attorneys for the bank, and for having Mulford reinstated as attorney for the bank in their stead. On November 12, 1898, respondent sent the following telegram to Dillon & Dunning:

"Seattle, Wn., Nov. 12, '98.

"Dillon & Dunning, Los Angeles, Cal.

"Substitute S. P. Mulford as our attorney in suit this bank against C. C. and Kate A. Calkins. Send bill for services.          First National Bank of Seattle."

This telegram was received by Dillon & Dunning on the day of its date. On November 28th following, on motion of S. P. Mulford, the order of substitution was made in accordance with the telegram.

It seems to us that the facts disclosed show nothing more than the making of a contract by one member of a firm in behalf of the firm. Such contracts are not void, nor are they the contracts of the individual member of the firm making them. At common law the rule was well established that, where a contract not under seal is made by an agent in his own name for an undisclosed principal, either the agent or principal may sue on it; the defendant having the same rights as if the agent had been the contracting party. The rule was most frequently applied to sales and transactions of agents, brokers, and partners. *Sims v. Bond,* 5 Barn. & Adol. 389.

"The contract of the agent is the contract of the principal, and he may sue or be sued thereon, though not named therein; and notwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol, it is well settled that the principal may show that the agent who made the contract in his own

name was acting for him.    This proof does not contradict the writing; it only explains the transaction." *Ford v. Williams,* 21 How. 289.

See *Eastern R. R. Co. v. Benedict,* 5 Gray 561, 66 Am. Dec. 384; *Blanchard v. Page,* 8 Gray 300; *Hunter v. Giddings,* 97 Mass. 44, 93 Am. Dec. 54; *Higgins v. Mc-Crea,* 116 U. S. 680, 6 Sup. Ct. 557.

1 Lindley on Partnership, p. *275, uses this language: "This doctrine is constantly applied in partnership cases; it happens every day that a firm sues on a contract entered into on its behalf by one of its members, and it is not by any means necessary that the person dealing with him should have been aware that the one partner was acting on behalf of himself and other people."    This principle applies to dormant and ostensible partners, with this distinction:    "But a dormant partner never need be joined as a coplaintiff in an action on a contract entered into with the firm or with one of its members."    1 Lindley on Partnership, p. *276.    This rule is in consonance with Ballinger's Code, § 4824:    "Every action shall be prosecuted in the name of the real party in interest, except as is otherwise provided by law."

Within the ordinary scope of their business or profession, we think the general principles of the law of partnership apply to lawyers with the same force that they do to partnerships engaged in other occupations or professions. *Jackson v. Bohrman,* 59 Wis. 422, 18 N. W. 456.    In *Eggleston v. Boardman,* 37 Mich. 19, it was said:

"The retainer of one member of a firm is a retainer of all the members, and unless otherwise stipulated the cause might be conducted and argued by any one of them."

If this be correct, it must logically follow that the firm may sue and recover for services rendered.    We are of the opinion, taking into consideration all the correspond-

ence, the stipulation, orders for substitution of attorneys, as well as the telegrams which passed between respondent and Dillon & Dunning, that the testimony on the part of appellant tended to show that the actual contract of employment was made with Dunning for the benefit of Dillon & Dunning, that there was no material variance between allegations and proof in that particular, and that the trial court erred in granting the nonsuit and dismissing the case.

The judgment of the superior court is reversed, and the cause is remanded for a new trial.