G. Alan Garden *et al. v.* T. S. Riley *et al., Executors*

(No. 8226)

Submitted November 20, 1935.  Decided December 10, 1935.

*James B. Riley* and *Robert J. Riley,* for plaintiffs in error T. S. Riley and others, executors.

*McCamic & Clark, Jay T. McCamic* and *W. R. Tinker, Jr.,* for Frank A. Hawley and others.

*Charles J. Schuck, Herman A. Hundt, David A. McKee* and *A. C. Schiffler,* for defendants in error.

Kenna, Judge:

The matter in controversy in this proceeding is the reasonableness of a charge for professional services of the law firms

of Erskine, Palmer & Curl and Handlan, Garden & Mathews, and of John P. Arbenz made against T. S. Riley, Lewis F. Brand and George W. Oldham, executors of the estate of James L. Hawley, deceased. The services for which the charge was made were rendered to James L. Hawley during his lifetime. The attorneys named, after the death of James L. Hawley, filed their joint account before George C. Beneke, commissioner of accounts for Ohio County, before whom, at the time, was pending the matter of settling the accounts of the executors, defendants here. The account, as rendered, was in the amount of $15,000.00, and was supported by the affidavit of John C. Palmer, Jr. Counter affidavits challenging the amount of the account were filed by the executors, and the matter went to hearing before the commissioner. The commissioner of accounts completed his report on the 23rd day of April, 1934, and upon the claim in question found that $10,000.00 was a reasonable and proper charge. Exceptions by the executors were taken to the report of the commissioner, and on the first Monday in June, 1934, the report was confirmed by the county court. On July 17, 1934, an appeal was allowed to the circuit court of Ohio County from the order of the county court sustaining the report of the commissioner of accounts; and on the 6th day of March, 1935, the order of the county court was affirmed by the circuit court. It is from the order of the circuit court of Ohio County that this appeal is prosecuted.

The services forming the basis of the account were performed in defending James L. Hawley upon a petition filed in the circuit court of Ohio County in open court on the 22nd day of September, 1930, by John M. Hawley, his half-brother. The petition sought to have James L. Hawley adjudged an insane person, the appointment of a committee to take the custody and control of his person and property, and for certain injunctions to effectuate its purpose. It appears that counsel were employed by Mr. Hawley on September 25, 1930, three days after the filing of the petition in the circuit court, and that the matter went to hearing on either October 5th, or October 6th, and continued through October 9th, when further hearing was suspended due to the required

absence of the judge of the circuit court. The hearing was never resumed, and the employment of the attorneys was terminated on November 13, 1930, by the death of Mr. Hawley.

The errors relied upon for reversal are (1) that the circuit court erred in affirming the order of the county court; (2) that the order of the county court in overruling the exceptions of the plaintiffs in error was erroneous; (3) that the sum of $10,000.00 is grossly excessive and should not have been allowed; (4) that the commissioner of accounts was without authority to proceed with the hearing of testimony after the adjudication of John P. Arbenz as a bankrupt and before the intervention of the trustee in bankruptcy; (5) that James L. Hawley was of unsound mind at the time of the employment of the attorneys, and was unable, therefore, to enter into a contract of employment; (6) that the contract of employment shows upon its face that John C. Palmer, Jr., J. Bernard Handlan and John P. Arbenz, individually, were the persons entitled to assert the claim attempted now to be asserted on the part of John C. Palmer, Jr., by the firm of Erskine, Palmer & Curl, and on the part of J. Bernard Handlan, deceased, by the surviving partners of the firm of Handlan, Garden & Mathews; and (7) that the circuit court erred in allowing interest on the sum of $10,000.00 from November 13, 1931.

The first three assignments of error relate to the amount of the fee allowed by the commissioner of accounts and approved by the county court and by the circuit court of Ohio County.

The testimony adduced before the commissioner of accounts by the claimants was made the basis of hypothetical questions which were prepared in writing, and were submitted to attorneys at law practicing in Ohio County for their opinion as to the worth of the services established by the claimants' testimony and reflected in the hypothetical questions. The principal hypothetical question comprises fifteen pages of the printed record. There is no material conflict concerning the evidence embraced in the question, the principal contention of the plaintiffs in error being that the question is not based upon a proper conception of the elements entering into the

fixing of proper charges for professional services on the part of an attorney at law. This contention is based mainly upon point three of the syllabus in *Stafford* v. *Bishop,* 98 W. Va. 625, 127 S. E. 501, which reads as follows: ''In determining the value of an attorney's services upon a *quantum meruit,* a jury may take into consideration evidence as to the attorney's ability, skill, experience, diligence, and standing in his profession, as well as the nature and extent of the services performed, the difficulties encountered, the responsibility assumed, the amount involved, the physical and mental labor expended, the results achieved, their benefit to the client, and the usual and customary charges for like services in the same vicinity.'' It will be observed that this syllabus does not purport to exclude other elements which may enter into the fixing of a proper fee for an attorney at law in the performance of a given service. It merely names certain elements that are proper to be considered. In the case relied upon, the trial court was reversed on two points: the first, a question of the statute of limitations applying to specific items of a fee charged, and the second, because the expert testimony of the lawyers produced as witnesses for the plaintiff to justify the charging of an annual retaining fee of $250.00 for sixteen years, was necessarily based upon an assumption that an annual retainer was contemplated by the contract of employment, whereas, the proof did not bear out this contention and therefore did not sustain the hypothetical basis of the testimony of the experts. But the plaintiff in error here says that the testimony of Messrs. John A. Howard, Nelson C. Hubbard, J. M. Ritz, A. C. Schiffler and Carl O. Schmidt, attorneys of high standing practicing at the Ohio County Bar, who testified to the reasonableness of the $15,000.00 charge made by the claimants, was improperly based in part upon the wealth of James L. Hawley, and that the hypothetical question did not properly put before these witnesses the elements upon which an attorney's charge for services should rest. As far as the wealth of James L. Hawley is concerned, it is variously estimated throughout the record at from $1,700,000.00 to $3,000,000.00. The proceeding to have Mr. Hawley declared insane and for the appointment of a committee necessarily

involved the legal control and management of this large estate. The question of Mr. Hawley's wealth, therefore, was relevant on the question of the responsibility that the attorneys incurred in accepting the employment, and while, of course, the recovery or loss of the estate was not directly involved in the proceeding before the county court, the value of the estate was certainly involved from the standpoint of Mr. Hawley. The question was whether he should be allowed to have the untrammeled and free enjoyment of his own property amounting to from $1,700,000.00 to $3,000,000.00, or whether he should be restrained and restricted from the control and enjoyment thereof because of the fact that he was of unsound mind. We are of the opinion that it was entirely proper to show the value of the estate, the control and management of which was involved in the proceeding for the appointment of the committee for Mr. Hawley, and that the value of the Hawley estate is in no improper way stressed in the hypothetical question propounded to the witnesses, nor in their replies to those questions. At least two of the three eminent attorneys at the Ohio County Bar who testified for the defendants that in their opinion a much less charge than ten thousand dollars would have been reasonable, expressly stated that they took the wealth of Mr. Hawley into consideration in reaching their conclusion, although that element was not mentioned in the questions asked them.

Concerning the proper test of the value of legal services, and the elements that may be justly considered in making a charge therefor, we believe that the Canons of Professional Ethics of the American Bar Association may be accepted as at least a highly persuasive utterance. Canon 12, at page 714 of the Reports of the American Bar Association for the year 1934, reads as follows:

> "In fixing fees, lawyers should avoid charges which overestimate their advice and services, as well as those which undervalue them. A client's ability to pay can not justify a charge in excess of the value of the service, though his poverty may require a less charge, or even none at all. The reasonable requests of brother lawyers, and of their widows and orphans

without ample means, should receive special and kindly consideration.

"In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other business while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service.

"In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade."

As against the reasonableness of the charge of $10,000.00 found by the commissioner of accounts, it is urged that the time actually devoted by the attorneys as represented by their day books, or diaries, which were introduced in evidence, is totally inadequate to sustain the charge from any viewpoint. Roughly, the time actually employed, both in the trial and in the preparation of the case, as well as the time employed before the death of Mr. Hawley and after the last day on which evidence was taken, is 82 hours for Mr. Palmer, 65½ hours for Mr. Arbenz and seven days for Mr. Handlan. It may be that, tested on a per diem basis alone, the allowance of $10,000.00 might be found excessive, according to the standards of the locality in which the services were rendered. But although this element is entitled to material consideration, it is not controlling. Of course, an attorney at law is not required to base his charge upon the actual time spent in the employment. Cases can readily be imagined in which it would

be the least considered element entering into an attorney's charge for services. Vastly important results may be quickly brought about by a lawyer of great ability and experience, that would fail entirely of accomplishment after a long struggle in less competent hands. Considering the fact that the fee charge of $15,000.00, as originally made, was reduced by the commissioner of accounts to $10,000.00, and that both the county court and the circuit court approved this figure, we cannot say but that this element has been given due consideration as the matter now stands.

It is urged by counsel for the plaintiff in error that a lunacy hearing is a comparatively simple matter for an attorney to conduct, and that this fact should weigh heavily in demonstrating the unreasonableness of a $10,000.00 fee. We seriously doubt if this contention is borne out by the circumstances of this case. The record shows that three of the leading law firms of the city of Wheeling were employed to prosecute the petition in the circuit court for the purpose of establishing that Mr. Hawley was of unsound mind. Four or five days were spent in the taking of testimony in the circuit court, and when the case was adjourned the petitioners' testimony had not yet been completed. The evidence in resistance to the prayer of the petition was never reached in the circuit court on account of the death of Mr. Hawley. While the evidence taken in this hearing is not before us, we are of the opinion that the assertion that the duties to be performed by counsel representing Mr. Hawley were essentially simple and uncomplicated is not of material weight.

Another argument advanced by the plaintiffs in error is that counsel did not truly represent the interests of Mr. Hawley at the hearing in the circuit court because of the fact that they did not call their client and at once submit him to examination by a commission of doctors for the purpose of determining his sanity. On this contention, it must be remembered that counsel representing Mr. Hawley did not have the affirmative on the issue of insanity. They were privileged, we think, to conduct their case for Mr. Hawley on the theory that he was presumed, in the first instance, to be sane. There was no obligation upon counsel, under the circumstances, and

before the proof for the petitioner seeking an adjudication of insanity, had been concluded, to submit their client to an examination of doctors to be appointed by the court, or otherwise. It does not appear that counsel for petitioners made any request at the hearing that this be done.

We are of the opinion, under all of the circumstances of the case, that the record before us fails to disclose that the actions of the commissioner of accounts, and of the county court of Ohio County, and of the circuit court of that county, in approving the charge of $10,000.00 as being reasonable, were clearly wrong.

The fourth assignment of error is that the commissioner of accounts was without authority, after the adjudication of John P. Arbenz as a bankrupt and before the intervention of the trustee in bankruptcy in this proceeding, to proceed therein in the taking of testimony. The trustee in bankruptcy does not complain of this procedure, and while it may, indeed, have been erroneous, we are of the opinion that it cannot be availed of by the plaintiff in error here. It does not appear that the rights of the executors were in anywise prejudiced in this respect.

It is further urged that because, in a letter written by him on September 25, 1932, Mr. Hawley employed Mr. Palmer, Mr. Handlan and Mr. Arbenz individually, this recovery cannot be had in the name of their firms. We are of the opinion that the employment of one member of a law firm is, to all practical intents and purposes, the employment of the firm, and that a judgment in the firm name could be pleaded as *res adjudicata* to bar a recovery by an individual partner who was joined as plaintiff in the former suit; and, therefore, that this assignment of error lacks merit. *Thorp* v. *Ramsey,* 51 Wash. 530, 99 P. 584; *French* v. *Cunningham,* 149 Ind. 632, 49 N. E. 797; *Warner & Post* v. *Griswold,* 8 Wend. (N. Y.) 665; *Dennis* v. *First Nat. Bk.,* 33 Wash. 161, 73 P. 1125.

Another assignment of error is based upon the contention that at the time Mr. Hawley is alleged to have employed counsel in the proceeding to have him declared insane, he was in fact insane, and incapable of making a contract for that reason. To sustain this contention, a judgment order of the

circuit court of Ohio County, entered on the 9th day of August, 1932, and reciting the verdict of a jury finding that a writing dated August 2, 1930, was not the true will and testament of James L. Hawley, deceased, was introduced in evidence in this case. The judgment order shows that by special interrogatory the jury expressly found that James L. Hawley was of unsound mind when he signed the writing dated August 2, 1930. We do not feel called upon to discuss the status of a contract for the employment of counsel to defend an effort to have him adjudicated insane made by a person who may afterwards be so adjudicated. We think that it is sufficient to say in this case that the judgment order in question falls short of establishing that Mr. Hawley was of unsound mind when he employed counsel to perform the services in question here. That finding came at a much later date and related only to his capacity to make a will at the specific time that the will was executed.

The next point relied upon for reversal is the fact that interest was awarded from November 13, 1931, one year after the death of Mr. Hawley. This evidently was done on the theory that the claims could have been enforced at any time after that date under the statute. We are of the opinion, however, that because of the fact that this claim, as it was first presented, was in the amount of $15,000.00, and since the disallowance of that amount by the commissioner of accounts, his action in that regard not having been reversed, demonstrates that the executors would have been wrong in paying the account as originally presented, and establishes the fact that interest should not run until after the adjudication of the amount to be paid, which was the date of the filing of the report of the commissioner of accounts. *Colorado Coal & Iron Company* v. *John,* 5 Colo. App. 213, 38 Pac. 399; *Gallup* v. *Perue,* 10 Hun. (N. Y.) 525; *Hadley* v. *Ayers,* 12 Abb. Prac. Rep. (N. S.) (N. Y.) 240.

The order of the circuit court of Ohio County is, therefore, affirmed in so far as the amount of the recovery is concerned, but reversed as to the allowance of interest, and the case is remanded with the direction that judgment be entered in favor of the defendants in error in the amount of ten thou-

sand dollars with interest thereon from the third day of May, 1934, until paid. The defendants in error having substantially prevailed in this Court, they are to recover their costs upon this writ of error.

*Affirmed in part; reversed in part; remanded.*

KENNA, JUDGE, concurring:

I wish to supplement what I have written for the Court with a brief observation on the procedure involved in initiating a claim of this sort before a commissioner of accounts. The jurisdiction of the commissioner of accounts was directly challenged at the hearing before him, and was evidently made a point in the circuit court and perhaps before the county court, since a brief in opposition to the appeal was filed in this Court by counsel for the executors in which the question was raised. The point is not stressed upon this submission. Nevertheless, and particularly in view of the observations I intend to make upon the procedural aspect in the case of *James Keeley et al.* v. *T. S. Riley et al., executors,* 116 W. Va. 677, 183 S. E. 43, growing out of this same hearing before the commissioner of accounts upon another claim there filed, I desire, if I can, to keep my own position upon the question free from confusion.

Section 1 of article 2 of chapter 44 of the Code provides that, upon the qualification of any personal representative, the estate of his decedent shall be referred to a commissioner of accounts ''for proof and determination of debts and claims.''

Section 6 provides that claims properly itemized, accompanied by vouchers and verified, shall be taken as proved unless denied by counter affidavit, in which case the commissioner shall fix a time and place for hearing evidence upon such contested claim.

Section 8 provides for the filing before the commissioner of proof of contingent and unliquidated claims and provides that there shall be no distribution of assets, except as otherwise provided in the act, without reserving a sum sufficient to meet such contingent or unliquidated claims or the proportion thereof equal to what is paid to other creditors of the

same class. The section further provides that if such liability becomes fixed before the commissioner completes his report, evidence thereof may be taken and the claim allowed.

Section 17 provides the manner of dealing with contingent and unliquidated claims, and with claims not matured, in the report of the commissioner of accounts.

Without going into the tedious detail that would be necessary for a full exposition of the meaning of these provisions in the light of all of the other provisions of article 2, I believe that a careful examination of that entire article shows distinctly that the matters that the commissioner is intended definitely to pass upon are those claims based upon a contractual undertaking, either express or implied, for the payment of money, and upon judgments and decrees that may have been rendered upon claims of that nature, or of any other nature, and become final against the estate of the decedent. I think that it is reasonably clear that the commissioner of accounts, in view of the express provisions of section 8 and of section 17 of article 2, providing the method of dealing with contingent and unliquidated claims, was not intended directly to pass upon claims sounding in tort and claims sounding in damages for breach of contract.

I recognize that against this view there may be urged the fact that the claim here before us is unliquidated from the standpoint that it rests upon a *quantum meruit,* the fact that neither party to the contract could alone render its amount certain, and the further fact that it is now in dispute. For many purposes, this claim would undoubtedly have to be regarded as an unliquidated claim, but I do not believe that it should be so treated within the meaning of this statute. Section 6 of article 2 of chapter 44 expressly provides for the filing of a counter affidavit and for the contesting of claims before the commissioner of accounts. Since a dispute over a claim would necessarily render it "unliquidated" within the general definition, it seems reasonably clear that the "unliquidated claims" of which the commissioner of accounts takes no cognizance, except to set aside the estimated amounts thereof under the statute, are not the class of "unliquidated claims" within the general definition, but that that expres-

734

sion is used in this particular statute in a manner and meaning to be determined by the purpose and intention of the act itself, and not by the general definition of the expression "unliquidated claim."

I am, therefore, of the opinion that the commissioner of accounts was within his powers in passing upon this claim.