STATE *ex rel.* TED JOHNSON, *et al., Commissioners, etc.,*

CABELL COUNTY

*v.*

DAN C. ROBINSON, *Judge*

CIRCUIT COURT OF CABELL COUNTY

(No. 14266)

Decided January 30, 1979.

*Greene, Ketchum & Mills and George A. Mills, III,* for relators.

*Barrett, Chafin, Lowry & Hampton, Lafe C. Chafin and Ray L. Hampton, II,* for respondent.

McGRAW, JUSTICE:

This is an original proceeding in prohibition wherein petitioners Johnson and Adams seek to prohibit the enforcement of an order of the respondent judge adjudging them to be in wilful civil contempt of court and committing them to the custody of the Sheriff of Cabell County to be incarcerated until such time as they comply with the terms of certain previous orders of the court. Execution of the order adjudging them in contempt has been stayed pending a decision in this Court.

The underlying issue presented is whether the provisions of W.Va. Code, 7-7-8 [1972], governing the appointment of special prosecutors, vests discretion in a county commission to pay only what it determines to be reasonable compensation for the legal services rendered by a special prosecutor, or whether it requires a county commission to expend from the county treasury such amount of compensation for attorneys fees as are ordered by the circuit court. We hold that W.Va. Code, 7-7-8 grants a county commission the authority to ascertain and establish a reasonable compensation for the legal services rendered by a prosecutor.

The facts giving rise to this controversy and the procedural history of the case can be briefly outlined. Dale C. McCoy was indicted by a Cabell County Grand Jury on a charge of first degree murder. The first trial resulted in a jury verdict of guilty, but a new trial was ordered. The Cabell County prosecuting attorney and his assistants were disqualified from prosecuting the retrial. Pursuant to W.Va. Code, 7-7-8, respondent appointed attorneys Edward V. Lee and Ray L. Hampton, II as special prosecutors, and their prosecution resulted in a guilty verdict. Following the completion of their services, the special prosecutors informed the court of the amount of time they had expended in the prosecution of the matter and moved the court to allow them a total fee of $7,212.97 based upon a rate of sixty dollars per hour for in-court work and fifty dollars per hour for out-of-court work. Orders were entered awarding fees in this amount, directing the circuit clerk to certify these amounts to the county commission, and directing the commission to pay the sums to the special prosecutors. Purchase requisitions were attached to the aforesaid orders and, in the latter part of July of 1978 they were presented to the county commission.

As of the first week of September the amounts were unpaid. On September 8th, Lee and Hampton, by counsel, moved the court to issue a rule directing Roy Adams, Bill Dunfee and Ted W. Johnson, collectively the county commission, to show cause why they should not

be held in contempt of court for their failure to comply with the court's orders directing payment of the special prosecutors' fees. The motion was granted and a show cause hearing was set for September 15th. During the hearing, Dunfee was dismissed on the motion of counsel for the special prosecutors after it was determined that he had been in favor of payment of the fees in the amounts ordered by the court. Counsel for the special prosecutors presented testimony intended to show that the fees charged were reasonable. It was their contention that if the fees were reasonable, the commission did not possess the discretionary power to lower them. The theory of the defense was that under W.Va. Code, 7-7-8 the county commission could exercise the discretionary power to pay the fee in an amount that they deemed reasonable and, accordingly, could lower the fee from the amount recommended by the circuit judge. The testimony of commission members, Johnson and Adams, indicated that they found the fee as ordered unreasonable, and it was upon this ground that they declined to order payment.

The pertinent portions of W.Va. Code, 7-7-8 are contained in the second paragraph: "The court shall certify to the county court the performance of that service when completed and recommended [sic] to the county court a reasonable compensation for the attorney for his service, and the compensation, when allowed by the county court, shall be paid out of the county treasury."[1]

---

[1] That portion of W.Va. Code, 7-7-8 [1972] relating to the appointment and compensation of special prosecutors correctly reads in its entirety as follows:

If, in any case, the prosecuting attorney and his assistants are unable to act, or if in the opinion of the court it would be improper for him or his assistants to act, the court shall appoint some competent practicing attorney to act in that case. The court shall certify to the county court the performance of that service when completed and recommend to the county court a reasonable compensation for the attorney for his service, and the compensation, when allowed by the county court, shall be paid out of the county treasury. 1972 W. Va. Acts, ch. 21.

If the county commission possesses the authority asserted by the relators such authority is to be found in the words of this sentence. The use of "recommended" in the past tense is a codification mistake and the phrase correctly reads "and recommend to the county court a reasonable compensation ..." The primary meaning of 'recommend' as well as its clear connotation indicates that the Legislature intended for the circuit court to act in an advisory role. Neither the word 'recommend' nor its context here implies that the circuit court's action in recommending fees is binding on the commission. This conclusion is further buttressed when we examine the phrase "the compensation, when allowed by the county court ..." We are urged by the respondents to interpret the word 'when' as an adverb with the meaning "at that time", thereby giving the phrase a function of merely expressing the sequence or chronology of the procedure for payment. We find this interpretation to be without merit. An analysis of the whole sentence leads inescapably to the conclusion that if the word 'when' were used in this sense it would be redundant, superflous and without meaning.

It is a well known rule of statutory construction that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning. To interpret the word 'when' as an adverb in this instance would be to render it meaningless. On the contrary, we find that the word 'when' is, in this instance, used as a conjunction with the meaning "in the event that, or if." Used in this sense it strongly suggests that the county commission may choose not to allow the compensation as recommended. The use of the word 'recommend' and the use of 'when' as a conjunction clearly indicate a legislative intent to vest discretion in the county commission with respect to the payment of special prosecutor fees. When intent of the Legislature clearly appears from a reading of the statute, it is unnecessary for a reviewing court to attempt construction. We believe that this statute plainly expresses a legislative intent and, consequently, it is unnecessary to search for a meaning

beyond the plain words. In this instance there is nothing to construe. This is a rule of statutory construction so well established and often cited that we find it unproductive to cite authority here.

Accordingly, we hold the respondent exceeded his legitimate powers in holding the relators herein in contempt for questioning the reasonableness of the special prosecutors' fees and award the writ.

The relators also raise the issue of whether W.Va. Code, 7-7-8 authorizes the circuit court to appoint more than one special prosecutor per case as was done here. The controlling portion of the statute, written in the singular, reads: "[T]he court shall appoint some competent practicing attorney to act in that case." In enacting W.Va. Code, 2-2-10(a),[2] prescribing general rules of statutory construction, the Legislature has directed that, unless a different intent on the part of the Legislature is apparent from the context, "the singular may be construed as the plural and the plural as the singular in the construction of a statute when we do so will carry out the evident intent of the Legislature." *State ex rel. Scanes v. Babb*, 124 W. Va. 428, 432, 20 S.E.2d 683, 685 (1942).

We find nothing in the context of the wording of this statute evidencing an intent to restrict the statute's meaning to the singular. The purpose of the statute is to provide the state with adequate counsel in cases of disability of disqualification of the regular prosecuting attorney. Certainly the Legislature did not intend to unduly handicap the state in its prosecution of criminal matters by limiting the number of special prosecutors to

---

[2] The statute, in material part, reads:

The following rules shall be observed in the construction of statutes, unless a different intent on the part of the legislature be apparent from the context:

(a) A word importing the singular number only may be applied to several persons or things, as well as to one person or thing; a word importing the plural number only may be applied to one person or thing as well as to several; and a word importing the masculine gender only may be applied to females as well as males.

one. If the Legislature intended to limit the number of special prosecutors to one per case, we believe they would have clearly and specifically expressed this intent. Absent such specifically expressed intent we decline to place an unduly restrictive interpretation on the words of the statute where such interpretation would create an absurd result and vitiate the statutory purpose. We note that there have been prior instances where more than one special prosecutor was appointed. See, e.g., State ex rel. Goodwin v. Cook, ____ W. Va. ____, 248 S.E.2d 602 (1978); State ex rel. Whitman v. Fox, ____ W. Va. ____, 236 S.E.2d 565 (1977).

The circuit court possesses discretion in this matter. Without doubt there are complex cases that demand more than one prosecutor. If the circuit court, in considering all of the circumstances, determines that the complexity of the case requires multiple prosecutors, such discretion if exercised with reasonable limits is not to be interfered with.

Yet, in exercising its discretion to appoint more than one special prosecutor, the trial court must act reasonably and be mindful of the defendant's due process right to fair trial. In this regard, it was recently held in syl. pt. 2 of State v. Pratt, ____ W. Va. ____, 244 S.E.2d 227 (1978) that "[a] trial court is responsible for preventing an oppressive overmatch between prosecutors and defense counsel, such as may occur when the defender is young and inexperienced and the prosecution is by an array of experienced and able lawyers." The nature of the defendant's legal representation thus necessarily must be a factor in trial court's decision-making process if its duty and the defendant's rights are to have any meaning.

An examination of the transcript of the contempt proceeding below leaves us with the impression that quite apart from the primary problem addressed above, much confusion exists regarding the proper general procedure to be followed under W.Va. Code, 7-7-8. We suggest some guidelines: At the completion of the special prosecutors

services, there should be submitted to the circuit court an itemized statement indicating the type of services performed as well as the time spent in the performance of each particular type of service. Such itemization and specificity will undoubtedly aid the county commission in assessing the reasonableness of the fee asserted and will have the salutary effect of graphically indicating the amount of work often involved in complex criminal prosecutions. The statement should indicate the total time expended and should set forth the desired rate of pay.

The statute directs that the circuit court then certify to the county commission the performance of the services asserted and recommend a reasonable compensation. In the original proceedings below the court utilized orders to: certify the performance of services, set forth the time expended, indicate the fee charged, and direct payment by the county commission. We do not believe that the language "shall certify to the county court ..." contemplates the use of an order directing payment. No sense of the word 'certify' connotes an order of the court. 'Certify' has been defined as "to attest, or to attest authoritatively." *See*, 6A *Words and Phrases* at 86 (1966). *Black's Law Dictionery* at 287 (Rev. 4th ed. 1968) defines 'certify' as "to testify in writing; to make known or establish as a fact." We believe that 'certify' to the county court simply indicates that the court should, by affidavit, or other attested writing, state that certain services as indicated on the attorney's statement were in fact performed.

The statute next directs the court to recommend a reasonable compensation. This may be done in the document used to certify the performance of the services or by letter. The court is free to recommend the fee as requested by the attorney or to set a fee that it deems to be reasonable. Finally, in accordance with the reasoning set forth in this opinion, the county court may then pass upon the reasonableness of the fee and in the exercise of their discretion pay the fee as recommended, reduce it or even increase it. In assessing the reason-

ableness of the recommended fee, the commission may consider a wide range of factors.[3]

The statute contains nothing which precludes the county commission and a prospective special prosecutor from discussing the matter of fee prior to the prosecutor's appointment. There is no explanation as to why this was not done in the instant case, but we find this course of action not only reasonable but the preferable approach in view of the fact that the compensation is payable from the county treasury. Where possible, the special prosecutor and the county commission should agree to a specified amount of compensation prior to the

---

[3] In view of the disposition of this case and the absence of any statutory criteria to be employed in placing a reasonable value on the services rendered by a special prosecutor, we deem it appropriate to point to some factors traditionally employed in making such decisions. The Code of Professional Responsibility, DR 2-106, relating to fees for legal services, lists some factors, among others, which may be considered:

(A) A lawyer shall not enter into an agreement for charge, or collect an illegal or clearly excessive fee (fn. omitted).

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

See, 7 Am. Jur.2d *Attorneys At Law* §§ 235-48 (1963) and the numerous references therein; *Gardon v. Riley,* 116 W. Va. 723, 183 S.E. 46 (1935).

performance of the legal services in order to avoid disputes such as have above arisen in this case.

The Legislature has not acted to establish an hourly rate and a statutory maximum for the prosecution of criminal cases as they have done in regard to the defense of such cases. Under W.Va. Code, 51-11-8 [1977], an appointed defense attorney's compensation for actual and necessary legal services is fixed at a rate of twenty dollars per hour for work performed out of court and twenty five dollars per hour for work performed in court not to exceed a maximum of one thousand dollars. That section also established a state fund financed by the Legislature and administered by the director of the administrative office of this Court. *See also*, W.Va. Code, 62-3-1 [1977].

It is a broadly accepted fact that West Virginia county governments, because of limited taxing power, are hard pressed to meet the important local needs of the citizenry.[4] The limitations on the ability of county commissions to raise revenues create financial difficulties not only for county commissions but also for special prosecutors who may not be paid for legal services within any reasonable period of time. These considerations alone suggest the need for legislative action if future problems are to be avoided.

In conclusion, we hold that W.Va. Code, 7-7-8 as it concerns the appointment and payment of special prosecutors vests discretion in the county commission to ultimately fix the amount of the special prosecutor's fee. We award the relief as prayed for.

*Writ awarded.*

---

[4] *See generally*, C. Davis, E. Elkins, C. Frasure, M. Reeves, W. Ross & A. Sturm, *West Virginia State and Local Government* 452 (1963); Bureau for Government Research, W. Va. Univ., Vol. 3, No. 3, *The West Virginia Public Affairs Reporter* 6 (1978).