IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

No. 13-0603

FILED

**April 10, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

RON KING, "Fire Marshal/Code Official" for the City of Nitro, DAVID A.
CASEBOLT, duly elected and serving Mayor for the City of Nitro, and the CITY OF
NITRO, a municipal corporation and political subdivision of the State of West Virginia,
Defendants Below, Petitioners

v.

RICHARD J. NEASE and LORINDA J. NEASE, husband and wife,
Plaintiffs Below, Respondents

_____

Appeal from the Circuit Court of Kanawha County
Honorable Charles E. King, Jr., Judge
Civil Action No. 12-C-1716

REVERSED

_____

Submitted: March 26, 2014
Filed: April 10, 2014

Johnnie E. Brown, Esq.
Theresa M. Kirk, Esq.
Pullin, Fowler, Flanagan, Brown
 & Poe, PLLC
Charleston, West Virginia
Counsel for Petitioners

James A. Dodrill, Esq.
Law Office of James A. Dodrill
Hurricane, West Virginia

E. Kay Fuller, Esq.
Martin & Siebert, L.C.
Martinsburg, West Virginia
Counsel for Respondents

JUSTICE LOUGHRY delivered the Opinion of the Court.
JUSTICE BENJAMIN dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1. "A regulation that is proposed by an agency and approved by the Legislature is a 'legislative rule' as defined by the State Administrative Procedures Act, *W.Va. Code*, 29A-1-2(d) [1982], and such a legislative rule has the force and effect of law." Syl. Pt. 5, *Smith v. West Virginia Human Rights Comm'n*, 216 W.Va. 2, 602 S.E.2d 445 (2004).

2. Pursuant to West Virginia Code § 29B-1-3(5) (2012), a public body is vested with the authority and discretion to impose a search or retrieval fee in connection with a Freedom of Information Act request to provide public records provided that such fee is reasonable.

LOUGHRY, Justice:

The petitioners, the City of Nitro, its mayor and its fire marshal/code official (herein collectively referred to as the "City"), appeal from the April 25, 2013, order of the Circuit Court of Kanawha County granting summary judgment in favor of the respondents, Richard A. and Lorinda A. Nease (hereinafter the "Neases"), on the issue of whether this state's Freedom of Information Act ("FOIA")[1] authorizes the collection of a search fee in connection with a document request. Addressing a municipal ordinance enacted by the City that permits an hourly charge for document requests requiring more than ten minutes, the trial court ruled that West Virginia Code § 29B-1-3 (2012) authorizes public bodies to collect the costs of copying requested records but does not sanction a search fee. As support for its position that the Legislature contemplated more than just the costs of duplication, the City relies upon the plural form of the term "fees" used to reference the charges authorized for a FOIA request as well as the Legislature's subsequent adoption of legislative rules providing for search fees in reliance on this same authorizing language. Based upon the statutory language of FOIA and the agency-specific regulations that impose search fees under direct authority of FOIA, we determine that the fees authorized in conjunction with FOIA production requests include the actual costs of reproduction as well as a search or retrieval fee, provided that any such fee is reasonable. Accordingly, the decision of the circuit court is reversed.

---

[1]*See* W.Va. Code §§ 29B-1-1 to -7 (2012).

1

## I. Factual and Procedural Background

On June 14, 2012, the Neases served a FOIA request to inspect or copy certain public City records.[2] The City responded to the request by letter dated June 19, 2012, indicating that it would "be working to compile the documentation requested." When they failed to receive the documents originally requested, the Neases submitted a second FOIA demand on July 26, 2012. On July 31, 2012, the City sent the Neases a portion of the requested materials, consisting of both paper and electronic media.[3] By letter of the same date, the City advised the Neases that "the remaining files Back [sic] to 2007 are paper & will be required to be manually pulled and copied. Please advise if you are willing to assume the expense of an employee's time, and the cost of photocopying."

When the parties were unable to resolve this matter,[4] the Neases instituted the underlying FOIA action.[5] Both sides filed motions for summary judgment and, by ruling entered on April 25, 2013, the trial court granted summary judgment in favor of the Neases.

---

[2]The requested records included an ordinance; meeting minutes; transcripts or other documentation of the adoption of the requested ordinance; complaints filed with the City pertaining to storm drainage from June 14, 2007, to June 14, 2012; and notices of violation issued by the City relating to storm drainage for the same five-year period.

[3]According to the representations made during oral argument, the Neases were not charged by the City for any of these materials.

[4]During oral argument, it was revealed that the Neases never requested, and the City never provided, an estimate of the costs required to reproduce the requested documents.

[5]The action was filed on August 24, 2012.

2

As part of its ruling, the trial court determined that the City ordinance providing for the imposition of a search fee was unlawful.[6] It is from this ruling that the City now appeals.

## II. Standard of Review

The issue of statutory interpretation raised by the parties indisputably presents a question of law. As a result, our review of this matter is necessarily plenary. *See* Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 466 S.E.2d 424 (1995) (holding that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review"); *see also* Syl. Pt. 2, in part, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997) (stating that "[q]uestions of law are subject to a *de novo* review"). With this standard in mind, we proceed to consider the question of law before us.

## III. Discussion

At the center of this statutory dispute is the following fee-related language: "The public body may establish fees reasonably calculated to reimburse it for its actual cost in making reproductions of such records." W.Va. Code § 29B-1-3(5). The issue presented

---

[6]While the appendix record does not contain a copy of the ordinance at issue, the parties represent that it authorizes the assessment of a "fee for searches and compilation for Records that require more than ten (10) minutes to search and/or compile." For searches that exceed ten minutes, the City is purportedly authorized by this ordinance to charge $25.00 per hour for its employees' time to search for and/or compile requested records.

3

in this case is whether the Legislature, through its adoption of the fee-authorizing language, has sanctioned the inclusion of a search fee in addition to the costs associated with producing documents requested under FOIA. Critically, this case is not about the refusal of a public body to provide access to documents based on statutorily-specified exemptions. *See generally* W.Va. Code § 29B-1-4 (2012) (setting forth bases for exempting access to public records); *In re Charleston Gazette FOIA Request*, 222 W.Va. 771, 671 S.E.2d 776 (2008). Neither is this case about the reasonableness of the search fee established by the City's ordinance.[7] All that we are asked to decide is the precise question of whether FOIA allows a public body, pursuant to properly enacted statutes, rules, regulations, or ordinances, to include a search or retrieval fee for locating the requested documents.

In taking the position that FOIA does not contain a provision that allows public bodies to impose a search or retrieval fee, the Neases focus on the latter part of the statutory language at issue: "actual cost in making reproductions of records." W.Va. Code § 29B-1-3(5). Because the statute does not separately and explicitly provide for the imposition of a search or retrieval fee, the Neases argue that FOIA fails to authorize the imposition of such a fee.[8] Focusing solely on the "actual cost in making reproductions" language, the Neases

[7]The Neases have not raised any issue as to the unreasonableness of any potential search fee. As noted above, they did not request an estimate of the costs of reproducing the remainder of their document request. *See supra* note 4.

[8]As an example of a clearly authorized search fee, the Neases cite West Virginia Code
(continued...)

4

insist that the Legislature authorized public bodies to collect only the costs of making the copies and nothing more.

Limiting its examination to the same terms that the Neases regard as resolvent, the circuit court addressed the meaning of the phrase "actual cost in making reproductions." Turning to the definitions provided by a common dictionary, the trial court decided that the Legislature necessarily intended that "making reproductions" refers to "making copies." Then, without any extended consideration of the terms "actual cost,"[9] the circuit court declared that the five words under review necessarily refer solely to the duplication costs of the requested records.

To bolster its decision that a search or retrieval fee cannot be imposed under authority of FOIA, the circuit court relied upon FOIA statutes enacted by Virginia, Kentucky,

---

[8](...continued)
§ 16-29-2(a) (2011), which provides that "the cost may not exceed seventy-five cents per page for the copying of any [health care] record or records . . . and a search fee may not exceed ten dollars." *Id.*

[9]At least one court has recognized that the terminology "actual cost" in reference to making copies may include more than the costs of the purchasing the paper. *See North County Parents Org. v. Dep't of Educ.*, 28 Cal. Rptr. 2d 359, 361 (Cal. Ct. App. 1994) ("A 'reasonable fee' or the 'actual cost of providing the copy' could be interpreted to include the cost of all the various tasks associated with locating and pulling the file, excising material, etc.").

5

Ohio, and California.[10]  Despite marked differences in the language of those statutes,[11] the

trial court looked to the manner in which those states address the issue of fees under their

respective FOIA statutes.  Based on its conclusion that other states have chosen to directly

prohibit search fees or to directly authorize them,[12] the circuit court decided that our

Legislature would have squarely addressed the subject had it intended to authorize the

imposition of search fees.[13]  *See supra* note 11.


In seeking extrajurisdictional guidance to interpret the FOIA phrase "actual

---

[10]*See* Va. Code Ann. § 2.2-3704 (2011); Ky. Rev. Stat. Ann. § 61.874 (2004); Ohio Rev. Code Ann. § 149.43 (2007); Cal. *Gov't* Code § 6253(b) (2004).

[11]Kentucky prohibits charges for staff-related charges in compiling FOIA requests unless the public agency "is asked to produce a record in a nonstandardized format, or to tailor the format to meet the request of an individual or a group"; Virginia allows "reasonable charges not to exceed its actual cost incurred in accessing, duplicating, supplying, or searching for the requested records"; and California structures the fees to cover "direct costs of duplication, or a statutory fee if applicable."  *See* Ky. Rev. Stat. Ann. § 61.874(3);Va. Code Ann. § 2.2-3704F.; Cal. *Gov't* Code § 6253(b).  For purposes of bulk commercial special extraction requests served upon the bureau of motor vehicles, Ohio defines  "actual cost" as "the cost of depleted supplies, records storage media costs, actual mailing and alternative delivery costs, or other transmitting costs, and any direct equipment operating and maintenance costs, including actual costs paid to private contractors for copying services."  *See* Ohio Rev. Code Ann. § 149.43(F)(2)(a).

[12]In reviewing the FOIA statutes relied upon by the trial court, it was clear that the referenced statutes were replete with exceptions rather than clearly providing for or against the use of a search fee.  *See supra* note 11.

[13]The trial court fails to appreciate that the converse is equally true:  If the Legislature had wanted to prohibit the potential imposition of search fees, a proscription against the use of such fees could have been included in FOIA.

costs in making reproductions," the circuit court failed to appreciate the proper scope of its inquiry. The language subject to interpretation, as the City emphasizes, is more than just the five-word phrase examined by the trial court and the Neases. By constraining their focus to the meaning of "actual costs," a separate critical statutory term was overlooked–"fees." That term, as the City observes, is defined as "[a] charge for labor or services." Black's Law Dictionary at p. 690 (9ᵗʰ ed. 2009). In contrast, a "cost" is defined as "[t]he amount paid or charged for something; price or expenditure." *Id.* at p. 397. Through the wholesale omission of any discussion of the term "fees," the trial court and the Neases skirted crucial statutory language that must be considered in resolving the matter before us. *See State ex rel. Johnson v. Robinson*, 162 W.Va. 579, 582, 251 S.E.2d 505, 508 (1979) (observing "that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning").

As this Court recognized in *HCCRA v. Boone Memorial Hospital*, 196 W.Va. 326, 472 S.E.2d 411 (1996), "[i]t is a fundamental principle of statutory construction that the meaning of a word cannot be determined in isolation, but it must be drawn from the context in which it is used." *Id.* at 338, 472 S.E.2d at 423. Elucidating further, we observed that "[o]ften, 'the meaning of a word that appears ambiguous if viewed in isolation [will] become clear when the word is analyzed in light of the terms that surrounds it.'" *Id.* (quoting *Smith v. United States*, 508 U.S. 223, 229 (1993)). Because the Legislature has provided for the

7

recovery of fees and not just actual costs, as advocated by the Neases, we must proceed to determine whether the term "fees" was intended to cover more than just mere duplication-related costs.

Given that the Legislature has previously relied upon the fee-authorizing language of FOIA before us, we do not have to decide this issue without guidance. On three separate occasions, the Legislature has formally approved legislative rules that establish search fees in connection with FOIA document requests submitted to various state agencies. *See* 24 C.S.R. § 5-4 (2011) (providing for $30 record search fee of Board of Osteopathy record requests); 60 C.S.R. § 2-11 (2010) (setting $20 per hour search fee for DEP record requests); 61 C.S.R. § 2-7.1.c (1990) (adopting $10 per hour search fee for agricultural record requests). The specified authority for the adoption of each of the above agency-proposed search fees was West Virginia Code § 29B-1-3–the same provision at issue in this case.

It is axiomatic that "[a] regulation that is proposed by an agency and approved by the Legislature is a 'legislative rule' as defined by the State Administrative Procedures Act, *W.Va. Code*, 29A-1-2(d) [1982], and such a legislative rule has the force and effect of law." Syl. Pt. 5, *Smith v. West Virginia Human Rights Comm'n*, 216 W.Va. 2, 602 S.E.2d 445 (2004). Through the Legislature's formal approval of legislative rules which establish

8

the use of agency-specific search fees under authority of FOIA, there can be no dispute that search fees may be included as part of a FOIA request. Given the undeniably clear position of the Legislature on this issue, we find no basis for questioning whether search fees may be imposed under authority of FOIA. Consequently, we hold that pursuant to West Virginia Code § 29B-1-3(5), a public body is vested with the authority and discretion to impose a search or retrieval fee in connection with a FOIA request to provide public records provided that such fee is reasonable. As a result of this ruling, we conclude that the circuit court erred in its determination that the City lacked authority to enact an ordinance providing for a search fee in connection with a FOIA request.

We wish to make clear that our decision in this matter did not require, or even demand, a consideration of the policy reasons which underlie FOIA. While the trial court found it necessary to draw upon this Court's previous recognition that "[t]he disclosure provisions of this State's Freedom of Information Act, . . . are to be liberally construed, and the exemptions to such Act are to be strictly construed," no disclosure-related provision was at issue in this case. *See* Syl. Pt, 4, in part, *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985). The City never sought to prevent the Neases from having access to the documents they sought to inspect. Instead, it merely sought to charge a search fee in connection with its culling of five years worth of documentation that the Neases requested. And this Court, rather than weighing in on access versus non-access, was merely called upon

9

to apply established statutory language on which the Legislature itself has relied in approving FOIA-related search fees by multiple state agencies. This case was never about the denial of access to public records; instead, the limited issue presented here was the validity of a fee enacted pursuant to clear statutory authority.

## IV. Conclusion

Based on the foregoing, we find that the decision of the Circuit Court of Kanawha County to award of summary judgment to the respondents through its order of April 25, 2013, was in error and, accordingly, we reverse.

Reversed.