IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 20-0940

_____

FILED
**June 11, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel. MORGANTOWN OPERATING COMPANY,
LLC d/b/a MORGANTOWN HEALTH AND REHABILITATION CENTER,
Petitioner

v.

THE HONORABLE PHILLIP D. GAUJOT, JUDGE OF THE CIRCUIT COURT OF
MONONGALIA COUNTY; and KIMBERLY DEGLER, as the duly Appointed
Administratrix of the Estate of JACQULIN LEE COWELL, deceased,
Respondents

_____

ORIGINAL PROCEEDING IN PROHIBITION
WRIT DENIED

_____

Submitted: April 20, 2021
Filed: June 11, 2021

Anders W. Lindberg, Esq.
Andrew P. Smith, Esq.
Steptoe & Johnson PLLC
Huntington, West Virginia

Crystal Bombard-Cutright, Esq.
Steptoe & Johnson PLLC
Morgantown, West Virginia

Dallas F. Kratzer III
Steptoe & Johnson PLLC
Columbus, Ohio

Counsel for Petitioner

Dino S. Colombo, Esq.
Kala L. Sowers, Esq.
Colombo Law
Morgantown, West Virginia

Counsel for Respondent Kimberly Degler,
Administratrix of the Estate of Jacqulin Lee
Cowell, Deceased

i

JUSTICE WALKER delivered the Opinion of the Court.

CHIEF JUSTICE JENKINS AND JUSTICE ARMSTEAD dissent and reserve the right to file separate opinions.

**SYLLABUS BY THE COURT**

1.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.  These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue.  Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2.      Actions for death that fall under the purview of the Medical Professional Liability Act, West Virginia Code §§ 55-7B-1, et seq., necessarily also fall under the purview of the Wrongful Death Act, West Virginia Code §§ 55-7-5, et seq.

3.      "Statutes in derogation of the common law are allowed effect only to the extent clearly indicated by the terms used.  Nothing can be added otherwise than by

i

necessary implication arising from such terms." Syllabus Point 3, *Bank of Weston v. Thomas*, 75 W. Va. 321, 83 S.E. 985 (1914).

4. "Where there is any doubt about the meaning or intent of a statute in derogation of the common law, the statute is to be interpreted in the manner that makes the least rather than the most change in the common law." Syllabus Point 5, *Phillips v. Larry's Drive-In Pharmacy, Inc.*, 220 W. Va. 484, 647 S.E.2d 920 (2007).

5. "'[W]here two statutes are in apparent conflict, the Court must, if reasonably possible, construe such statutes so as to give effect to each.' Syl. Pt. 4, in part, *State ex rel. Graney v. Sims*, 144 W.Va 72, 105 S.E.2d 886 (1958)." Syllabus Point 9, *Barber v. Camden Clark Mem. Hosp. Corp.*, 240 W. Va. 663, 815 S.E.2d 474 (2018).

6. "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syllabus Point 1, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984).

WALKER, Justice:

Jacqulin Cowell was a resident of Morgantown Health and Rehabilitation Center (Morgantown Health), a nursing home, until she died in June 2018. More than one year later, her daughter and administratrix of her estate sued Morgantown Health alleging that a pattern of poor care, neglect, and abuse resulted in Ms. Cowell's death. Morgantown Health moved to dismiss the case based on the one-year statute of limitations in the Medical Professional Liability Act (MPLA), West Virginia Code § 55-7B-4(b) (2017). But the circuit court denied the motion in reliance on the two-year statute of limitations contained in the Wrongful Death Act, West Virginia Code § 55-7-6 (1992). Because we find no clear error of law in the circuit court's application of the Wrongful Death Act, we deny the writ of prohibition sought in this case by Morgantown Health.

## I.    Facts and Procedural History

Jacqulin Cowell moved into the nursing home operated by Petitioner Morgantown Operating Company, LLC d/b/a Morgantown Health and Rehabilitation Center on April 24, 2018. On June 17, 2018, Ms. Cowell was taken to the Emergency Department of Ruby Memorial Hospital because she developed an unstageable decubitus ulcer on her coccyx. Ms. Cowell's death a few days later on June 25, 2018 was attributed to sepsis and osteomyelitis. Ms. Cowell's daughter and administratrix of her estate, Kimberly Degler, retained counsel to pursue a wrongful death claim against Morgantown

1

Health, and, in compliance with the pre-suit requirements of the MPLA, served a notice of claim and certificate of merit on Morgantown Health on January 29, 2020.[1]  After Morgantown Health did not respond, Ms. Degler filed her lawsuit on May 15, 2020, alleging that Ms. Cowell suffered a pattern of poor care, neglect, and abuse that resulted in her death.

Morgantown Health moved to dismiss the case, arguing that the one-year statute of limitations in West Virginia Code § 55-7B-4(b) had lapsed because Ms. Degler filed the notice of claim and screening certificate of merit one year and seven months after Ms. Cowell's death, and filed the complaint one year and ten months after her death. Ms. Degler responded that the *two*-year statute of limitations derived from the Wrongful Death Act, West Virginia Code § 55-7-6(d) applied.

The circuit court denied the motion to dismiss, concluding that the MPLA and the Wrongful Death Act work in concert where there is a death that results from medical negligence.  Specifically, the circuit court reasoned that the MPLA statute of limitations provision, § 55-7B-4(b), relates to causes of action against medical providers for personal *injuries*, but does not encompass causes of action for wrongful *death* against medical providers.  The limitation on wrongful death actions, it found, is dictated by the statute of limitations provision found in the Wrongful Death Act, § 55-7-6.  Morgantown Health filed this petition for a writ of prohibition, contending that the circuit court clearly

---

[1] *See* West Virginia Code § 55-7B-6 (2019),

erred in applying the Wrongful Death Act statute of limitations instead of that contained in the MPLA.

## II.     Standard of Review

West Virginia Code § 53-1-1 outlines the parameters of original jurisdiction in matters of prohibition: "[t]he writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." This Court explained the relevant considerations in issuing a discretionary writ of prohibition, when a circuit court is alleged to have exceeded its legitimate powers, in *State ex rel. Hoover v. Berger*:[2]

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that

---

[2] 199 W. Va. 12, 483 S.E.2d 12 (1996).

3

the third factor, the existence of clear error as a matter of law, should be given substantial weight.[3]

We have discussed that prohibition is an extraordinary remedy, "reserved for 'really extraordinary causes.'"[4] Extraordinary writs do not issue to prevent a simple abuse of discretion.[5] Rather, discretionary writs of prohibition serve the limited purpose of rectifying "substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate."[6] Even then, those issues may only be appropriate for prohibition when they "may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely

---

[3] *Id.* at Syl. Pt. 4. Morgantown Health states, generally, and without support, that because the claim is time-barred, the circuit court lacks subject-matter jurisdiction. Under that theory, the Court would not employ the *Hoover* factors to determine whether to exercise its discretion and grant the requested writ. But, contrary to its own argument, Morgantown Health grounds its argument exclusively in application of the *Hoover* factors. So, we find the latter characterization of this petition for a writ of prohibition as involving a non-jurisdictional question to be the more appropriate lens through which to view this case. *See State ex rel. W. Virginia Reg'l Jail Auth. v. Webster*, 242 W. Va. 543, 836 S.E.2d 510 (2019) (applying *Hoover* factors and holding circuit court's failure to dismiss action pursuant to statute of limitation argument was not clearly erroneous as matter of law).

[4] *State ex rel. Vanderra Resources, LLC v. Hummel*, 242 W. Va. 35, 40, 829 S.E.2d 35, 40 (2019) (quoting *Am. Elec. Power Co. v. Nibert*, 237 W. Va. 14, 19, 784 S.E.2d 713, 718 (2016)).

[5] Syl. Pt. 2, in part, *Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

[6] Syl. Pt. 1, in part, *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979), *superseded by statute on other grounds as stated in State ex rel. Thornhill Grp., Inc. v. King*, 233 W.Va. 564, 759 S.E.2d 795 (2014).

reversed if the error is not corrected in advance."[7] With these considerations in mind, we turn to the parties' arguments.

### III.    Analysis

Because the operative dates in this case are set and undisputed, the very narrow issue we examine is whether the MPLA, West Virginia Code § 55-7B-4(b)[8] or the Wrongful Death Act, West Virginia Code § 55-7-6(d), supplies the statute of limitations for wrongful death causes of action that sound in medical negligence.  Much of Morgantown Health's argument is based on a misconception that causes of action for death under the MPLA are not distinct from causes of action for personal injury.  For that reason, we reiterate at the outset the distinctions between personal injury cases alleging medical negligence and wrongful death cases alleging medical negligence and some examples of claims that fall somewhere in between.  For all their differences, all claims on this spectrum require adherence to the provisions of the MPLA insofar as they allege medical professional liability.

The claims can be grouped into various classes.  One class of actions is for personal injury, where the patient—still living—files a claim in his or her own name for

---

[7] *Id.*

[8] *See* discussion, *infra*. Morgantown Health agrees that the analysis relating to § 55-7B-4(b), which is specific to claims against it as a nursing home, is equally applicable to subsection (a), which relates to other health care providers since the statutory language and underlying analysis is the same.

personal injuries allegedly caused by negligent medical care. A second, narrower class of actions is for personal injury, where the patient—still living—files a claim in his or her own name for personal injuries allegedly caused by negligent medical care, but dies before the completion of the action.[9] This second type of action is revivable by the decedent's beneficiaries through the provisions of the Wrongful Death Act and may be maintained in addition to a wrongful death cause of action brought under § 55-7-5.[10]

A third class of actions is for personal injury filed by representatives of the decedent for personal injuries the decedent suffered that were allegedly caused by negligent medical care, but that medical care was not the cause of the decedent's death.[11] Such personal injury claims survive the death of the decedent, again by virtue of the Wrongful Death Act. We explained the distinction between this type of personal injury action and wrongful death actions in *Mack-Evans v. Hilltop Healthcare Center, Inc.*:

---

[9] *See* Syl. Pt. 3, *Estate of Helmick by Fox v. Martin*, 188 W.Va. 559, 425 S.E.2d 235 (1992) ("West Virginia Code § 55-7-8 (1989) authorizes the decedent's beneficiaries to recover damages for a decedent's pain and suffering incurred between the time of injury and the time of death where the decedent had instituted an action for personal injury prior to his death and the action was revived and amended pursuant to West Virginia Code §§ 55-7-8 and 55-7-6 (1989).").

[10] *See* W. Va. Code § 55-7-8. *See also Mack-Evans v. Hilltop Healthcare Center, Inc.*, 226 W. Va. 257, 261 n.7, 700 S.E.2d 317, 321 n. 7 (2010) ("[I]f a decedent brings a cause of action for personal injury prior to death, and subsequently dies from such injury, his/her representative may revive the personal injury claim and simultaneously litigate a wrongful death claim.").

[11] W. Va. Code § 55-7-8a. *See also State ex rel. Horner v. Black*, 156 W.Va. 290, 294–95, 192 S.E.2d 731, 734 (1972) ("[W. Va.Code § 55-7-8a] appl [ies] to the survival of an action where the injured party dies for reasons other than the injury sustained in an accident."); *Mack-Evans*, 226 W. Va. at 261 n.7, 700 S.E.2d at 321 n.7.

> [u]nder [West Virginia Code § 55-7-8a] a personal injury claim may be filed by a decedent's representative if the injury alleged did not result in the death of the decedent. That is, under this statute, a personal injury claim cannot be initiated by a decedent's representative if the injury complained of caused the decedent's death. In that situation, only a wrongful death claim may be brought.[12]

*Mack-Evans* thus brings us to a fourth class of actions, those filed by the representative of a decedent's estate alleging that negligent medical care caused the death of the decedent: wrongful *death* actions brought under West Virginia Code § 55-7-5.[13] In this case, we are dealing exclusively with this fourth class: Ms. Degler, the personal representative of Ms. Cowell's estate, alleges that Morgantown Health rendered negligent medical care that caused Ms. Cowell's death.[14]

The existence of this spectrum of actions illustrates two things: first, there is a patent distinction between personal injury claims and wrongful death claims; and second, the Wrongful Death Act works in concert with the MPLA. While the former

---

[12] 226 W. Va. at 261 n.7, 700 S.E.2d at 321 n.7.

[13] *Id.* ("In that situation [where the injury complained of caused the decedent's death], only a wrongful death claim may be brought. *See Courtney v. Courtney*, 190 W.Va. 126, 128 n.5, 437 S.E.2d 436, 438 n.5 (1993) ('[Injuries] resulting in death are covered by our wrongful death statute, W. Va.Code, 55-7-5 (1931).' . . . *See also Conrad v. Wertz*, 278 F.Supp. 428, 432 (N.D.W.Va. 1968) ('[I]f Roy M. Conrad died of injuries received in the collision this action must proceed under the Wrongful Death provision. If his death . . . was for reasons other than the injuries suffered in the wreck . . . , this action is permissible under [W. Va.Code] section 55-7-8a.')")

[14] Ms. Degler's complaint pleads negligence as Count II of the complaint, then pleads wrongful death as Count III. Insofar as that may create confusion, we note that this writ of prohibition as sought by Morgantown Health and as addressed by this Court is limited to the wrongful death cause of action.

illuminates our legislative analysis, below, the latter conclusion has primary import because Morgantown Health's chief argument is that the MPLA is the "exclusive remedy" for any action alleging medical professional liability.

### A. MPLA as an "exclusive remedy"

Morgantown Health argues that the circuit court clearly erred under this Court's holding in *Gray v. Mena*[15] when it applied the two-year statute of limitations in the Wrongful Death Act, and not the MPLA, to Ms. Degler's claim. Morgantown Health argues that in *Mena*, we found the MPLA to be the "exclusive remedy" for medical professional liability cases. Upon review of *Mena*, we find that characterization of its holding to be misleading. In *Mena*, we held:

> This Court's opinion in *Boggs v. Camden-Clark Memorial Hospital Corp.*, 216 W. Va. 656, 609 S.E.2d 917 (2004), is clarified by recognizing that **the West Virginia Legislature's definition of medical professional liability, found in West Virginia Code § 55-7B-2(i) (2003) (Supp. 2005), includes liability for damages resulting from the death or injury of a person for *any* tort based upon health care services rendered or which should have been rendered.** To the extent that *Boggs* suggested otherwise, it is modified.[16]

Morgantown Health suggests that the emphasized portion of this syllabus point supports its contention that the MPLA is the "exclusive remedy" for *any* tort that

---

[15] 218 W. Va. 564, 625 S.E.2d 326 (2005).

[16] *Id.* at syl. pt. 4.

8

falls under the purview of "medical professional liability" which, of course, includes wrongful death actions sounding in medical negligence. But, in *Mena*, this Court was not examining the MPLA as an exclusive remedy. Rather, we were tasked with determining whether the provisions of the MPLA applied to a specific set of facts: an alleged assault committed during medical treatment.[17]

So, while we agree that the MPLA *applies* to all actions alleging medical professional liability as that term is defined in the MPLA, we do not agree that *Mena* means that the MPLA applies to a medical professional liability claim to the exclusion of the Wrongful Death Act. Nothing in *Mena* prohibits application of the Wrongful Death Act in appropriate cases. In fact, it cannot, because actions for "death" as contemplated in the holding in *Mena* do not exist at law without the provisions of the Wrongful Death Act. On that point, we recently discussed that

> "[a]s no right of action for death by a wrongful act existed at common law, the right or cause of action for wrongful death, if maintainable, exists under and by virtue of the provisions of the wrongful death statute of this State, Sections 5 and 6, Article 7, Chapter 55, Code, 1931, as amended[.]"[18]

---

[17] In this case, Ms. Degler does not contest that the MPLA applies to her claim.

[18] *Michael v. Consolidation Coal Co.*, 241 W. Va. 749, 754, 828 S.E.2d 811, 816 (2019) (quoting *Baldwin v. Butcher*, 155 W. Va. 431, 433-34, 184 S.E.2d 428, 429 (1971)).

Thus, the MPLA is not comprehensive in and of itself for death actions; it must interact with the Wrongful Death Act where a death has occurred resulting from allegedly negligent medical care because the claim is not legally actionable or practically triable without it. No provision of the MPLA provides for the appointment of a representative to file and litigate a wrongful death claim;[19] no provision of the MPLA outlines the appropriate beneficiaries for wrongful death proceeds or the distribution thereof;[20] and no provision of the MPLA contemplates the elements of damage that might

---

[19] West Virginia Code § 55-7-6(a):

(a) Every such action shall be brought by and in the name of the personal representative of such deceased person who has been duly appointed in this state, or in any other state, territory or district of the United States, or in any foreign country, and the amount recovered in every such action shall be recovered by said personal representative and be distributed in accordance herewith. If the personal representative was duly appointed in another state, territory or district of the United States, or in any foreign country, such personal representative shall, at the time of filing of the complaint, post bond with a corporate surety thereon authorized to do business in this state, in the sum of $100, conditioned that such personal representative shall pay all costs adjudged against him or her and that he or she shall comply with the provisions of this section. The circuit court may increase or decrease the amount of said bond, for good cause.

[20] West Virginia Code § 55-7-6(b):

(b) In every such action for wrongful death, the jury, or in a case tried without a jury, the court, may award such damages as to it may seem fair and just, and, may direct in what proportions the damages shall be distributed to the surviving spouse and children, including adopted children and stepchildren, brothers, sisters, parents and any persons who were financially dependent upon the decedent at the time of his or her death or would otherwise be equitably entitled to share in such distribution after making provision for those expenditures, if any, specified in subdivision (2), subsection (c) of this section. If there are no such survivors, then the damages shall be distributed in accordance with the decedent's will or, if

10

be considered in a wrongful death action that would not arise in any other context.[21]  For those reasons, actions for death that fall under the purview of the Medical Professional Liability Act, West Virginia Code §§ 55-7B-1, et seq., necessarily also fall under the purview of the Wrongful Death Act, West Virginia Code §§ 55-7-5, et seq.

Continuing with that line of reasoning, Ms. Degler argues that the MPLA is also silent on the statute of limitations for wrongful death actions and speaks only to actions for personal injury, such that the Wrongful Death Act supplies the statute of limitations for wrongful death claims, even those that fall under the MPLA.  Morgantown Health argues that the MPLA speaks to the statute of limitations for both personal injury

---

there is no will, in accordance with the laws of descent and distribution as set forth in chapter forty-two of this code. If the jury renders only a general verdict on damages and does not provide for the distribution thereof, the court shall distribute the damages in accordance with the provisions of this subsection.

[21] West Virginia Code § 55-7-6(c):

(1) The verdict of the jury shall include, but may not be limited to, damages for the following: (A) Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent; (B) compensation for reasonably expected loss of (i) income of the decedent, and (ii) services, protection, care and assistance provided by the decedent; (C) expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death; and (D) reasonable funeral expenses.

(2) In its verdict the jury shall set forth separately the amount of damages, if any, awarded by it for reasonable funeral, hospital, medical and said other expenses incurred as a result of the wrongful act, neglect or default of the defendant or defendants which resulted in death, and any such amount recovered for such expenses shall be so expended by the personal representative.

*and* death and so trumps the Wrongful Death Act's limitation provision.  So, while we do not find that *Mena* establishes that the circuit court clearly erred when it denied Morgantown Health's motion to dismiss Ms. Degler's wrongful death claim, we next examine the statutory language of both the MPLA and the Wrongful Death Act for a conflict as to the statute of limitations.

### B.  *West Virginia Code § 55-7B-4 and West Virginia Code § 55-7-6*

In the MPLA, West Virginia Code § 55-7B-4(b) supplies the following statute of limitations for actions against, among others, a nursing home:

> A cause of action for injury to a person alleging medical professional liability against a nursing home, assisted living facility, their related entities or employees or a distinct part of an acute care hospital providing intermediate care or skilled nursing care or its employees arises as of the date of injury, except as provided in subsection (c) of this section, and must be commenced within one year of the date of such injury, or within one year of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such injury, whichever last occurs: *Provided*, That in no event shall any such action be commenced more than ten years after the date of injury.

On the other hand, the Wrongful Death Act, § 55-7-6(d), supplies this limitation on actions: "Every such action shall be commenced within two years after the death of such deceased person . . . ."

Ms. Degler argued below, and the circuit court agreed, that the MPLA limitation provision, by its plain terms, applies only to causes of action for "*injury*" and that the Wrongful Death Act applies to causes of action for *death*.  Ms. Degler's

12

argument is derived from this Court's decision in *Miller v. Romero*[22] and the statutory construction of West Virginia Code § 55-7B-4 as contemplating a distinction between injury and death, only speaking to the former by design of the Legislature. Morgantown Health contends that *Miller* has been overruled so it has no applicability or relevance and that the statute has been amended post-*Miller* to encompass both injury and death. We examine these arguments in turn.

### i.    *Miller v. Romero*

In *Miller*, this Court answered the certified question: "In a medical malpractice case, is the wrongful death statute of limitations tolled by the allegation of fraudulent concealment on the part of the defendant and/or failure on the part of the plaintiff to discover the cause of the decedent's death?"[23] The question was certified because, while the discovery rule had been applied in personal injury cases alleging medical negligence, the same had not been done in wrongful death cases alleging medical negligence.[24] In attempting to convince the Court that the discovery rule should apply, the plaintiff in *Miller* argued that the MPLA, West Virginia Code § 55-7B-4, supplied the statute of limitations for medical negligence as opposed to the Wrongful Death Act.[25] The Court rejected that argument for two reasons. First, the decedent died before the

---

[22] 186 W. Va. 523, 413 S.E.2d 178 (1991).

[23] *Id.* at 524, 413 S.E.2d at 179.

[24] *Id.* at 525, 413 S.E.2d at 180.

[25] *Id.* at 527, 413 S.E.2d at 182.

13

effective date of the MPLA, so it would not apply.[26] Second, the Court explained, "while we concede that the [MPLA] addresses both malpractice and actions involving death, *it does not supplant the two-year filing period for wrongful death found in W.Va.Code § 55-7-6.*"[27]

In reaching that conclusion, the *Miller* Court placed emphasis on the apparently intentional and repetitive use of the word "injury," and the absence of "death" in § 55-7B-4:

> Nothing in W.Va.Code § 55-7B-4, which sets forth the limitations for actions brought for "Health care injuries," provides for circumstances involving death cases, although both "injury" and "death" are discussed throughout the rest of the Act:
>
> > (a) A cause of action for *injury* to a person alleging medical professional liability against a health care provider arises as of the date of *injury*, except as provided in subsection (b) of this section, and must be commenced within two years of the date of such *injury*, or within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such *injury*, whichever last occurs: Provided, That in no event shall any such action be commenced more than ten years after the date of *injury*.[28]

---

[26] *Id.*

[27] *Id.* (emphasis added)

[28] *Id.* (emphasis in original).

14

This Court found § 55-7B-4 (1986) to be clear and unambiguous.[29]  Given the statutory construction principle that "'[t]he legislature is presumed to intend that every word used in a statute has a specific purpose and meaning[,]'"[30] the *Miller* Court reasoned, "[c]onversely, the omission of the word 'death' from W. Va. Code § 55-7B-4 must mean that the section applies only to injury cases and the legislature intended W. Va. Code § 55-7-6 to remain the applicable provision for limitations of actions involving wrongful death."[31]

After concluding that the Wrongful Death Act supplied the appropriate time period for filing, the Court went on to conclude that the discovery rule could not be applied because the Wrongful Death Act's two-year time frame is not, strictly speaking, a "statute of limitations" but is an element of the cause of action.[32]  This Court concluded that the Wrongful Death Act time limitation, being a creature of the Legislature, was not amenable to common law, equitable tolling doctrines such as the discovery rule absent incorporation by the Legislature.[33]  But, we found the potential inequities of such a rule to be unacceptable in cases of active concealment and contrary to the remedial purpose of

---

[29] *Id.*

[30] *Id.* (quoting *State ex rel. Johnson v. Robinson*, 162 W. Va. 579, 582, 251 S.E.2d 505, 508 (1979)).

[31] *Id.*

[32] *Id.* at 526-27, 413 S.E.2d at 181-82.

[33] *Id.*

15

the Wrongful Death Act.[34] As a result of those misgivings, we issued a syllabus point holding, "[t]he two-year period which limits the time in which a decedent's representative can file suit is extended only when evidence of fraud, misrepresentation, or concealment of material facts surrounding the death is present."[35]

### ii.    *Miller v. Romero as Good Law*

Morgantown Health argues that the conclusion in *Miller* that § 55-7B-4 of the MPLA does not supplant the Wrongful Death statute of limitations was dicta to begin with and is no longer good law under *Bradshaw v. Soulsby*,[36] a case issued ten years after *Miller*. In *Bradshaw*, this Court revisited the issue of whether the discovery rule could apply to wrongful death causes of action and did so in the context of a claim that fell under the purview of the MPLA.

*Bradshaw* was another wrongful death case alleging medical negligence. The plaintiff in that case did not file the suit until two years and three days after the decedent's death, which fell outside the two-year limitation imposed by the Wrongful Death Act.[37] She argued that the discovery rule should apply to toll the statute because she did not know the cause of death was attributable to the defendant until she received

---

[34] *Id.* at 527, 413 S.E.2d at 182.

[35] *Id.* at Syl. Pt 2.

[36] 210 W. Va. 682, 558 S.E.2d 681 (2001).

[37] *Id.* at 685, 558 S.E.2d at 684.

16

the autopsy report.[38]   The circuit court applied *Miller* and dismissed the wrongful death

action.[39]   On appeal, this Court re-examined *Miller* and found its analysis as to the

discovery rule lacking in that it simultaneously concluded that the Wrongful Death Act,

as a legislatively created action, was not subject to equitable tolling doctrines like the

discovery rule but then, incongruously, applied an equitable tolling doctrine in its

holding.[40]   Discussing that inconsistency, the Court in *Bradshaw* explained:

> After a careful reading of *Miller v. Romero,* it is clear the case is internally contradictory and fundamentally flawed in its reasoning. On the one hand, the case holds that "the right to sue for a wrongful death is created purely by statute"—and therefore, the wrongful death statutes cannot be interpreted under the common law to include any equitable tolling provision. But on the other hand, the case holds that it would be "contrary to both the remedial purpose of this statute and the public policy of this State" to allow a tortfeasor to avoid a wrongful death action through fraud, misrepresentation or concealment—and therefore interprets the wrongful death statutes to include an equitable, common law tolling provision. These opposing positions are inconsistent—either the statute of limitation in wrongful death actions can, or it cannot, be construed to include an equitable, common law tolling provision. *Miller v. Romero* takes both positions.[41]

*Bradshaw* then dismantled the portion of *Miller*'s analysis that the

Wrongful Death Act's time limitation is an element of the wrongful death cause of action

---

[38] *Id.*

[39] *Id.*

[40] *Id.* at 687, 558 S.E.2d at 686.

[41] *Id.*

as opposed to a statute of limitations.[42]  The *Bradshaw* Court reasoned that the *Miller* analysis unfairly characterized the Wrongful Death Act as in derogation of the common law subject to narrow construction by ignoring that it is a remedial enactment that alleviates the harshness of the common law, and thus should have been entitled to *liberal* construction.[43]  And, nothing in the Wrongful Death Act prohibited application of the discovery rule.[44]  *Bradshaw* thus overruled the holding in *Miller* that the discovery rule could not be applied to wrongful death causes of action.[45]

But, here is what *Bradshaw* did *not* do: it did not apply the MPLA statute of limitations in place of that contained in the Wrongful Death Act.  The holding in *Miller* was premised on two conclusions: first, that the Wrongful Death statute of limitations was the applicable provision, and second, that the Wrongful Death Act did not permit application of the discovery rule.  *Bradshaw* was a wrongful death case to which the

---

[42] *Id.* at 688, 558 S.E.2d at 687.

[43] *Id.* The Court looked to and applied Syllabus Point 4 of *Gaither v. City Hospital, Inc.*, 199 W. Va. 706, 487 S.E.2d 901 (1997):

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

[44] *Id.* at 689, 558 S.E.2d at 688.

[45] Syl. Pt. 7, *Bradshaw*.

18

MPLA undoubtedly applied, unlike *Miller*, which preceded the effective date of the MPLA. And, rather than apply § 55-7B-4 in lieu of the Wrongful Death Act to provide for application of the discovery rule in that particular case under already-existing law,[46] it left that conclusion untouched and took the harder route of re-examining the discovery rule under the Wrongful Death Act. *Bradshaw*'s entire analysis *accepts* the first conclusion from *Miller* and presupposes that the Wrongful Death Act's statute of limitations is the applicable provision in actions for death caused by medical negligence.[47] To that end, *Bradshaw* both reinforced and elevated the dicta from *Miller*. *Bradshaw*, a wrongful death action based on medical negligence, held at syllabus point 8:

> **In a wrongful death action**, under the discovery rule, **the statute of limitation contained in W.Va.Code, 55–7–6(d) [1992]** begins to run when the decedent's representative knows or by the exercise of reasonable diligence should know (1) that the decedent has died; (2) that the death was the result of a wrongful act, neglect, or default; (3) the identity of the person or entity who owed the decedent a duty to act with due care and who may have engaged in conduct that breached that duty; and (4) that the wrongful act, neglect or default of that person or entity has a causal relation to the decedent's death.[48]

Likewise, syllabus point 7 of *Bradshaw* states, "[t]he discovery rule, as set forth in *Gaither v. City Hospital*, 199 W. Va. 706, 487 S.E.2d 901 (1997), applies to

---

[46] *Gaither*, 199 W. Va. at 712, 487 S.E.2d at 907 (discussing long history of application of discovery rule in medical malpractice cases).

[47] *Bradshaw*, 210 W. Va. at 685-86, 558 S.E.2d at 684-85 (applying statute of limitations contained in Wrongful Death Act, § 55-7-6(d)).

[48] Emphasis added.

actions arising under the wrongful death act.  **To the extent that *Miller v. Romero*, 186 W. Va. 523, 413 S.E.2d 178 (1991) conflicts with this holding, it is overruled**."[49]

*Bradshaw* does not conflict with *Miller*'s conclusion that the Wrongful Death Act supplies the statute of limitations for death actions alleging medical negligence, but rather puts another feather in its cap.  So, we disagree with Morgantown Health's argument that *Miller*'s conclusion that the Wrongful Death Act supplies the statute of limitations for wrongful death actions resulting from medical negligence is dicta overruled by *Bradshaw*.  But, to the extent that cases decided post-*Miller* and post-*Bradshaw* have not required this Court to examine the amendments to § 55-7B-4 of the MPLA and may lead to a different result, we turn the focus of our analysis to the MPLA.[50]

### iii.      *§ 55-7B-4 and § 55-7B-2 Then and Now*

Morgantown Health's argument with respect to statutory construction and the legislative enactments post-*Miller* and *Bradshaw* is two-fold.  First, it argues that the definition of "medical professional liability" as used in § 55-7B-4 is defined as including

---

[49] Emphasis added.

[50] *See, e.g.*, *Mack-Evans*, 226 W. Va. at 260, 700 S.E.2d at 320.  Ms. Degler relies on *Mack-Evans* as supportive of her position given that it was decided in 2010, and we agree.  *Mack-Evans* involved both a wrongful death action and a personal injury action, and, while the statute of limitations was two years for both claims, the Court cited West Virginia Code § 55-7-6 as supplying the statute of limitations in addition to § 55-7B-4 (as opposed to § 55-7B-4 supplying the statute of limitations for both the wrongful death and personal injury actions).  Nonetheless, the parties clearly did not dispute the relevant statute of limitations, and we were not asked to analyze whether §55-7B-4 would apply to the exclusion of §55-7-6.  For that reason, while we find *Mack-Evans* supportive, it is far from dispositive.

20

both injury *and* death. Second, it argues that in 2003, after *Miller* and *Bradshaw*, the Legislature created the term "medical injury" and defined it as encompassing both injury *and* death. Morgantown Health proffers that with the creation of this term, all "injuries" under the MPLA are "medical injuries" – specifically those contemplated in § 55-7B-4(b) as subject to a one-year statute of limitations. For that reason, it argues that the MPLA now supplies the statute of limitations for personal injury actions and death actions since it conflicts with the two-year time frame under the Wrongful Death Act, § 55-7-6(d). As the more specific of the two, Morgantown Health argues, the MPLA trumps the Wrongful Death Act under rules of statutory construction.

We turn first to the argument relating to the definition of "medical professional liability" as including both injury and death. At the time *Miller* and *Bradshaw* were decided, the 1986 version of § 55-7B-4(a) was in effect:

> A cause of action for **injury** to a person alleging **medical professional liability** against a health care provider arises as of the date of **injury** . . . and must be commenced within two years of the date of such **injury**, or within two years of the date when such person discovers or with the exercise of reasonable diligence, should have discovered such **injury**, whichever last occurs: Provided, That in no event shall any such action be commenced more than ten years after the date of such **injury**.[51]

---

[51] Emphasis added. Of course, the instant case involves subsection (b), but Morgantown Health concedes that the analysis is applicable to both subsections (a) and (b) given that subsection (b), despite specifying a one-year statute of limitations for nursing homes and assisted living facilities, has the same operative language as subsection (a) otherwise.

21

The material portions of this statute – emphasized above – have not changed. Section 55-7B-4(b) still reads "A cause of action for **injury** to a person alleging **medical professional liability** . . . ."[52] And, the other references to "injury" remain intact.

The 1986 version of the MPLA did not define "injury," but that version of the statute did define "medical professional liability" to be "any liability for damages resulting from the **death or injury** of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient."[53] As discussed above, the Court in *Miller* found § 55-7B-4(a)[54] to be plain and unambiguous in that it referred to a cause of action for *injury* and not death, and the time frames in the statute run from the date of *injury*. It then concluded that "the omission of the word 'death' from W. Va. Code § 55-7B-4 must mean that the section applies only to injury cases and the legislature intended W. Va. Code § 55-7-6 to remain the applicable provision for limitations of actions involving wrongful death."[55]

As noted above, the definition of "medical professional liability" has always included the word "death." The *Miller* Court did not place any emphasis on that

---

[52] W. Va. Code § 55-7B-4(a)-(b) (2017).

[53] W. Va. Code § 55-7B-2(d) (1986) (emphasis added).

[54] *See supra* n.51.

[55] *Miller*, 186 W. Va. at 527, 413 S.E.2d at 182.

term or otherwise discuss it before concluding that the statute was plain and unambiguous; it did not find the inclusion of "death" in the term "medical professional liability" injected any ambiguity into the statute.[56]   Given that we have found *Miller* to be good law with respect to its conclusion that § 55-7-6 supplies the statute of limitations for claims under the MPLA that result in death, and neither the language of §55-7B-4 nor the definition of "medical professional liability" has been materially altered since *Miller* was decided, we do not find a clear error of law in the circuit court's refusal to deviate from *Miller* in this regard.

However, the MPLA underwent a comprehensive overhaul in 2003, and Morgantown Health contends that the 2003 amendments to the MPLA demand application of its one-year statute of limitations to Ms. Degler's claims as legislatively overruling *Miller*'s application of § 55-7-6.   That argument is premised on the Legislature's creation of the term "medical injury," which it defined to include both "injury and death."   Specifically, "medical injury" as defined under the amended MPLA means "injury or death to a patient arising or resulting from the rendering of or failure to

---

[56] We can postulate that it had little relevance since the statute is worded "a cause of action for injury alleging medical professional liability" as opposed to "a cause of action for medical professional liability" or a "medical professional liability action." Though "medical professional liability action" is not a term created under § 55-7B-2, it is now used in subsection (e) of § 55-7B-4, which relates to venue, whereas "cause of action for injury" is used in subsections (a), (b), and (c), all of which relate to the statute of limitations.  "Medical professional liability action" is also used throughout § 55-7B-6 in reference to the pre-suit requirements that must be met to file a claim under the MPLA.

render health care."[57]   That definition remains in effect in the current version of the MPLA.[58]

We reiterated above that the term "injury" was not defined under the MPLA at the time *Miller* or *Bradshaw* was decided. The same is true today: the Legislature created the term "medical injury," not "injury."  Morgantown Health would have us use "medical injury" to apply § 55-7B-4(b) as plain and unambiguous and yet asks us to read terms into that statute that do not exist.  Specifically, Morgantown Health argues that all "injuries" under the MPLA are medical injuries (i.e., all injuries include both injury and death).  Our lengthy discussion at the outset of this opinion regarding the important distinctions between injury and death under the MPLA, the Wrongful Death Act, and even the common law belies that argument.  Further, if all injuries under the MPLA are "medical injuries" encompassing both injury and death – why would the Legislature need to create and define that term?[59]

Morgantown Health asks us to read "medical injury" where the statute clearly states "injury," and insinuates the creation of that term injects ambiguity into § 55-7B-4.  But, we remind it that this Court concluded in *Phillips v. Larry's Drive-In*

---

[57] W. Va. Code § 55-7B-2(h) (2003).

[58] *See* W. Va. Code § 55-7B-2(h) (2017)

[59] *See* Syl. Pt. 4, *State ex rel. Hardesty v. Aracoma*, 147 W. Va. 645, 129 W. Va. 921 (1963) ("It is always presumed that the legislature will not enact a meaningless or useless statute.").

*Pharmacy, Inc.*, that the MPLA is in derogation of the common law and as such, its provisions must be given narrow construction.[60]   In recognizing the MPLA as in derogation of the common law, we cited syllabus point 3 of *Bank of Weston v. Thomas*: "[s]tatutes in derogation of the common law are allowed effect only to the extent clearly indicated by the terms used.   Nothing can be added otherwise than by necessary implication arising from such terms."[61]  We thus concluded in *Phillips*, "[w]here there is any doubt about the meaning or intent of a statute in derogation of the common law, the statute is to be interpreted in the manner that makes the least rather than the most change in the common law."[62]   And, as discussed previously, actions for death did not exist at common law, so the common law certainly makes a distinction between injury and death actions. [63]  We cannot presume "injury" equates to "injury or death" under a common law analysis, either.   So, we reject Morgantown Health's assertion that "injury" necessarily encompasses both injury and death as a general proposition, or specifically under the MPLA.

---

[60] 220 W.Va. 484, 492, 647 S.E.2d 920, 928 (2007).   Unlike the Wrongful Death Act, the MPLA is not a remedial enactment that creates rights that did not exist at common law.   Rather, it places *limitations* on medical negligence actions as they existed at common law through legislative means.   *See id.* at 491, 647 S.E.2d at 927 ("[O]ur examination of any portion of the MPLA is guided, at all times, by the recognition that the Act alters the "common law and statutory rights of our citizens to compensation for injury and death[.]" W.Va.Code, 55-7B-1. In other words, by its own terms, the entire MPLA is an act designed to be in derogation of the common law.")

[61] 75 W. Va. 321, 83 S.E. 985 (1914).

[62] Syl. Pt. 5, *Phillips*.

[63] *See supra* note 18.

In addition to the axiom cited in *Miller* that "the legislature is presumed to intend that every word used in a statute has a specific purpose and meaning[,]"[64] we also observe that "[c]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."[65] Morgantown Health's arguments urging us to read the MPLA *in pari materia* with the other provisions of the MPLA that explicitly reference "death" do nothing to overcome that presumption. Throughout the MPLA, the Legislature refers to both injury and death, and yet here, at § 55-7B-4(b), refers to only one. The presumption that the Legislature intended only injury, and not death, is underscored by the intentional creation of the term "medical injury" and the apparently intentional omission of that term in § 55-7B-4. That is particularly true given the way the Court previously applied § 55-7B-4 in *Miller*: an application the Legislature was long aware of. As to *Miller*, the Legislature was aware of this Court's application of § 55-7B-4 relating specifically to the term "injury"; then, some twelve years later, it created the term "medical injury" but *did not use it* in § 55-7B-4. The Legislature specifically incorporated the term "medical injury" in West Virginia Code §§ 55-7B-6, -7, -8, -9, and -9a, but did not incorporate it in § 55-7B-4. As such, the Legislature maintained use of

---

[64] *Miller*, 186 W. Va. at 527, 413 S.E.2d at 182 (quoting *State ex rel. Johnson v. Robinson*, 162 W. Va. 579, 582, 251 S.E.2d 505, 508 (1979)).

[65] *Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 312, 465 S.E.2d 399, 414 (1995) (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). *See also* syl. pt. 11, *Brooke B. v. Ray*, 230 W. Va. 355, 738 S.E.2d 21 (2013) ("It is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted.").

26

the language "a cause of action for injury" for the MPLA's statute of limitation, knowing how it would be applied, when it could very easily have completely altered this Court's application of that statute by amending it to read "a cause of action for injury or death" or "a cause of action for medical injury." We are not in the habit of presuming that the Legislature has made an oversight in its law-making responsibilities, particularly when it has a clear picture of how the statute has been and will be applied.

Morgantown Health also argues that we looked at a wrongful death case alleging medical negligence and applied the MPLA's statute of limitations in the memorandum decision, *Dean v. Gordinho*.[66] Morgantown Health misunderstands the type of action at issue in *Dean*. In that case, the plaintiff Dean brought a wrongful death cause of action against Dr. Gordinho, but the circuit court determined there were numerous intervening causes between Dr. Gordinho's treatment and the decedent's death.[67] For that reason, this Court confirmed that the cause of action was one for *personal injury* because the negligence alleged did not cause the decedent's death – a type 3 case, discussed above, that is expressly not a *death* action.[68] As noted, those classes of injury actions are distinct from wrongful death actions brought under West Virginia Code § 55-7-5. So, the action in *Dean* was one for personal injury subject to the MPLA's statute of limitations because the MPLA, at § 55-7B-4, specifically addresses

---

[66] 2019 WL 5289914 (W. Va. October 18, 2019).

[67] *Id.* at *3.

[68] *Id.*

the statute of limitations in actions for *injury*. If anything, *Dean* illustrates the point made above that injuries are distinct from death under the provisions of the MPLA, and unless expressly lumped together by the Legislature, must be treated differently.

Finally, Morgantown Health argues that the rules of statutory construction require us to apply the MPLA statute of limitations as it is the more specific of the two. We have discussed that "[w]here two statutes are in apparent conflict, the Court must, if reasonably possible, construe such statutes so as to give effect to each"[69] but, if effect cannot be given to each, "[t]he general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled."[70]

Morgantown Health's argument has two fundamental flaws in the context of §§ 55-7B-4 and 55-7-6(d): (1) the statutes are not in apparent conflict and (2) even if they are, they can be reconciled by construing the MPLA's statute of limitations to apply to personal injury actions, and the Wrongful Death Act's statute of limitations to apply to death actions. In this respect, Morgantown Health asks us to read "medical injury" in place of "injury" to *create* a conflict where none exists. We do not find West Virginia

---

[69] Syl. Pt. 9, *Barber v. Camden Clark Mem. Hosp. Corp.*, 240 W. Va. 663, 815 S.E.2d 474 (2018) (quoting Syl. Pt. 4, in part, *State ex rel. Graney v. Sims*, 144 W.Va 72, 105 S.E.2d 886 (1958).

[70] Syl. Pt. 1, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984).

Code § 55-7B-4(b) – referring to a statute of limitations for personal injury actions – to be in conflict with the statute of limitations espoused in West Virginia Code § 55-7-6(d) for wrongful death. And, in fact, avoidance of that conflict appears to be by Legislative design. The Legislature, if it so chooses, may amend § 55-7B-4 to specifically encompass actions for death to disabuse us of that notion. But, as the statute is currently written, we find no clear error of law in applying the statute of limitations in § 55-7-6(d) of Wrongful Death Act to actions for death alleging medical negligence. After thorough analysis, we are left with the same conclusion reached in *Miller* that the Legislature intended the Wrongful Death Act statute of limitations to apply to causes of action for death sounding in medical negligence, and the MPLA to apply to causes of action for personal injury sounding in medical negligence.

## IV. Conclusion

For the reasons set forth above, we find no clear error in the circuit court's application of the Wrongful Death Act's statute of limitations, § 55-7-6(d), to Ms. Degler's wrongful death claim. Accordingly, we deny the requested writ of prohibition.

Writ Denied.

29